**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**George AUBIN, Defendant–Appellant.**

**No. 94–10954.**

United States Court of Appeals,
Fifth Circuit.

June 24, 1996.

Samuel J. Buffone, Washington, DC, Gerald H. Goldstein, San Antonio, TX, for appellant.

Karen Quesnel, Robert E. Lindsay, Alan Hechtkopf, Washington, DC, U.S. Department of Justice, Paul E. Coggins, U.S. Atty., Dallas, TX, for appellee.

Before WISDOM, EMILIO M. GARZA and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Defendant Aubin was convicted of conspiracy to defraud the United States, bank fraud, and wire fraud. He appeals his convictions and sentence. Finding no error, we affirm.

## I. FACTS

In the Summer of 1984, Defendant, George Aubin, decided to buy a horse farm in Kentucky at a cost of approximately 22 million. The charges against Aubin arose out of a scheme to obtain funding from Western Savings and Loan for the purchase of the horse farm. Western was owned by Aubin's friend, Jarrett Woods. Western could not lend money to Aubin directly because of federal regulatory scrutiny of Aubin's activities. Together with James Hague and Louis Reese, Aubin arranged a "land flip"—the purchase and simultaneous resale of the same property at a higher price.

Reese and others sold, for $14 million, a large piece of property near the LBJ Freeway and the Central Expressway in Dallas, Texas to Haft, Inc., which Aubin, Reese, and Hague controlled. Haft immediately sold the property to Hague Enterprises, which was also controlled by Aubin, Reese, and Hague, for $28 million. The profit from the transaction was sent via wire transfer to another corporation set up by the parties to carry-out the purchase of the horse farm.

The land flip was designed to obtain cash for the purchase of the horse farm without disclosing the identity of the parties involved and without disclosing the true purpose of the transaction. None of the loan documents revealed Aubin's interest in the transaction, or the fact that the profit was to be used for the purchase of the horse farm. Haft, the entity that realized profit in the land flip, never filed income tax returns with the Internal Revenue Service. Haft was nominally controlled by Aubin's attorney, Richard Fuqua.

Aubin and co-defendant Fuqua were indicted by a grand jury in February of 1993. They were charged with conspiracy to commit offenses against the United States and to defraud the United States, in violation of 18 U.S.C. § 371 (Count 1); bank fraud, in violation of 18 U.S.C. §§ 1344 & 2 (Count 2); making false entries in the books and records of a federally insured credit institution, in violation of 18 U.S.C. §§ 1006 & 2 (Counts 3 & 4); and wire fraud, in violation of 18 U.S.C. §§ 1343 & 2 (Count 5). Aubin and Fuqua were tried in May and June of 1994. The jury returned verdicts of not-guilty as to Fuqua, but returned verdicts of guilty as to Defendant Aubin on counts 1, 2, and 5.

In October 1994, the district court sentenced Aubin to 60 months imprisonment on Count 1 and 60 months on each of Counts 2 and 5 to be served concurrently with each other and consecutive to the sentence on Count 1. The district court also ordered that Aubin make restitution in the amount of $42,773,552.25 to the Resolution Trust Corporation. Aubin timely filed this appeal.

## II. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

Among Aubin's numerous arguments on appeal, he challenges the sufficiency of the evidence supporting his convictions. In challenging the sufficiency of the evidence, a defendant "faces an imposing standard of review." *United States v. Parekh*, 926 F.2d 402, 405 (5th Cir.1991). A court reviewing the sufficiency of the evidence must "determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offenses beyond a reasonable doubt." *United States v. Charroux*, 3 F.3d 827, 831

(5th Cir.1993) (quoting *United States v. Pruneda–Gonzalez,* 953 F.2d 190, 193 (5th Cir.), *cert. denied,* 504 U.S. 978, 112 S.Ct. 2952, 119 L.Ed.2d 575 (1992)).

■ In the present case, the district court deferred ruling on Aubin's motion for judgment of acquittal until after the jury returned its verdict. Because the defendant was entitled to a ruling on his motion prior to presenting his defense, this Court will only consider the evidence presented in the Government's case-in-chief in assessing the sufficiency of the evidence. *United States v. Casilla,* 20 F.3d 600, 606 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 240, 130 L.Ed.2d 163 (1994); *United States v. Rhodes,* 631 F.2d 43, 44–45 (5th Cir.1980). Although it was error for the district court to defer ruling on Aubin's motion, such an error is harmless where, as here, the evidence presented during the government's case-in-chief is sufficient to support the verdict. *Rhodes,* 631 F.2d at 45.

1. Count 1, Conspiracy to Impede or Impair the IRS

On this charge, under 18 U.S.C. § 371, the Government bore the burden of proving beyond a reasonable doubt that Aubin agreed with at least one other conspirator to defraud the United States by obstructing the tax collecting function of the IRS, and one overt act in furtherance of the conspiracy. *United States v. Chesson,* 933 F.2d 298, 306 (5th Cir.), *cert. denied,* 502 U.S. 981, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991). Because Aubin claimed that the statute of limitations barred this prosecution, the Government was also required to show that an overt act was committed within the six years preceding the date of the indictment.

■ For the evidence to sustain the conviction, it is not necessary that the evidence show an express or formal agreement; evidence of "a tacit understanding is sufficient." *Iannelli v. United States,* 420 U.S. 770, 777 n. 10, 95 S.Ct. 1284, 1289 n. 10, 43 L.Ed.2d 616 (1975); *United States v. Hopkins,* 916 F.2d 207, 212 (5th Cir.1990). Louis Reese testified that one of the purposes of structuring the transaction as a land flip through Haft, Inc., was to "impede the IRS from collecting taxes by making the deals so complicated that . . . it was impossible to tell who owed taxes, what taxes might be owed and what the amount was." Reese also testified that he thought it was a part of the plan from the beginning that Haft would disappear. James Hague testified that filing tax returns for Haft would have been inconsistent with the secrecy necessary for the arrangement to succeed. Both Reese and Hague provided ample testimony regarding Aubin's central role in the transaction. This evidence is more than sufficient to allow a reasonable jury to find at least a "tacit understanding" that the parties would conceal Haft's profit from the IRS.

■ The government also presented sufficient evidence of an overt act in furtherance of the conspiracy within the statute of limitations period. The statute of limitations under the tax code for a conspiracy to defraud the United States in violation of 18 U.S.C. § 371 is six years. 26 U.S.C. § 6531(1). The grand jury returned the indictment in this case on February 24, 1993. Therefore, to sustain the conviction, there must be evidence of an overt act after February 23, 1987.

The evidence showed that the profit from the LBJ land flip was transferred to Slew Farms, a Cayman corporation set up by Hague, Reese, and Aubin. Hague, Reese, and Aubin, in turn, set up Cayman corporations to own their respective shares in Slew Farms. The corporation set up to hold Aubin's share was Sigma Group. The evidence also showed that Slew Farms owned a Kentucky corporation, Warrenton Farms, that was formed to own the horse farm. Aubin was the sole shareholder of Warrenton Farms.

On August 26, 1988, after federal regulators had made a criminal referral relating to the LBJ transaction, and after foreclosure had been ordered on the horse farm, Aubin caused Warrenton Farms to file for bankruptcy. The bankruptcy petition listed the IRS as a creditor having a priority in an unknown amount. However, the bankruptcy petition also falsely reported that Sigma Group had a secured claim against the prop-

erty of Warrenton Farms in the amount of $15,614,691. Warrenton Farms supposedly incurred this debt on October 23, 1984, the date the profit from the LBJ land flip was wired to Kentucky and the purchase of the horse farm was closed. The government presented evidence that this loan was a fiction, and that the supporting documentation had been backdated well after the fact to create the appearance of a loan. The government also presented evidence that Aubin directed that the loan documentation be created. Thus, the bankruptcy petition indicated that a fictional loan, rather than the unreported profit from the LBJ land flip, was the source of the horse farm purchase money. From this evidence, a reasonable jury could conclude that the bankruptcy petition was designed to conceal from the IRS the transfer of Haft's unreported profit to Warrenton Farms, and therefore constituted an overt act in furtherance of the conspiracy to defraud the United States.

### 2. Count 2, Bank Fraud

■ Aubin contends that there is no evidence that he intended to defraud Western Savings and Loan in violation of 18 U.S.C. § 1344. However, the very structure of the transaction would allow a reasonable inference of an intent to defraud. The evidence clearly indicates that the parties deliberately structured the transaction so that the loan documents would not reveal that Aubin or Reese were involved in the deal. The transaction was also designed to hide the fact that proceeds from the loan to Hague Enterprises were to be used to purchase the horse farm. Despite this evidence, Aubin contends that given Jarrett Woods' involvement in the transaction, and the full disclosure made to him, full disclosure was, in effect, made to Western.

In essence, Aubin argues that Woods' knowledge, as owner of Western Savings and Loan, should be imputed to Western, and that given the full disclosure to Woods there could be no finding of an intent to defraud Western. This argument is without merit. In *United States v. Saks*, 964 F.2d 1514 (5th Cir.1992), where the appellants had colluded with savings and loan officers who were co-

chairmen of the bank's board of directors and owned a controlling interest in the bank, this Court held that "[i]t is the financial institution itself—not its officers—that is the victim of the fraud the statute proscribes." 964 F.2d at 1518. After *Saks*, it is clear that bank officers, such as Woods, "with authority to bind their banks to others can nevertheless defraud the institutions they serve." *Id.* It is also clear that bank customers, like Aubin, "who collude with bank officers to defraud banks may also be held criminally accountable either as principals or aiders and abettors." *Id.* at 1518–19.

Aubin attempts to distinguish *Saks* on the basis of Woods' individual control over Western. However, the record indicates that Woods did not have unbridled discretion to make loans; the Western loan committee could veto his decisions, and he was concerned that the loan to Hague Enterprises would not be approved if the committee were aware of the facts. In fact, Woods knew that he could not tell the members of the loan committee the truth about the transaction because they would not want to do anything that might incur regulatory scrutiny. Thus, with respect to loan approval, Woods and Western were separate entities.

Aubin also relies on *FDIC v. Ernst & Young*, 967 F.2d 166 (5th Cir.1992). In *Ernst & Young*, the FDIC, suing as Western's assignee, brought a negligence action against an accounting firm that had audited Western. Judgment was granted in favor of the accounting firm. In holding that Western had not relied on the audit, this Court held that Woods' knowledge of Western's actual financial condition was imputable to Western. However, this Court limited its "holding narrowly to the facts of this case under Texas law—i.e. the FDIC, as assignee of a corporation with a dominating sole owner, sues an auditor for negligently performing an audit upon which neither the owner nor the corporation relied." 967 F.2d at 172. *Ernst & Young* is inapposite because it was an action for negligence under state law rather than a prosecution under a federal criminal statute, and because the FDIC merely stood in Western's shoes for purposes of its claim against the accounting firm. In any

event, the rule of Texas law on which this Court relied in *Ernst & Young*—that an agent's knowledge is imputed to his principal—does not protect those who collude with an agent to defraud the principal. *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.). Thus, Aubin's arguments on this point are unavailing.

### 3. Count 5, Wire Fraud

Aubin contends that there is no sufficient evidence that he had the specific intent to defraud the victims named in the wire fraud count of the indictment. The indictment alleged that Aubin devised the scheme in question to defraud Western, the IRS, the Federal Home Loan Bank Board (FHLBB), and the Federal Savings and Loan Insurance Corporation (FSLIC). As we have already determined, there was sufficient evidence to allow the jury to conclude that Aubin and his co-conspirators intended to defraud Western and the IRS. Both Reese and Woods testified that their scheme would also defraud the FHLBB and the FSLIC. The evidence clearly indicates that the parties knew they had to conceal the true nature of the transaction from federal regulators if the scheme was to succeed. Federal regulators had already issued a cease and desist order to at least one other savings and loan that had provided financing for Aubin's business ventures. Therefore, there is sufficient evidence to allow a reasonable juror to conclude that Aubin had the intent to defraud each of the victims alleged in the indictment.

### B. STATUTE OF LIMITATIONS—WIRE FRAUD

■ Aubin also contends that the prosecution for wire fraud is barred by the statute of limitations. Generally, the five-year limitations period of 18 U.S.C. § 3282 is applicable to wire fraud violations. However, the district court held that the ten-year limitations period of 18 U.S.C. § 3293 for offenses affecting financial institutions applied in this case. The scheme or artifice to defraud that was the basis for the charge of wire fraud in this case was designed to defraud, among others, Western Savings and Loan. Since

Western, a financial institution, was in fact defrauded in this case, and since there is no question that a wire transmission was used to execute this fraud, we hold that the district court was correct. The ten-year limitations period of 18 U.S.C. § 3293 is applicable, and the prosecution of this offense was not barred by the statute of limitations.

### C. CONSTRUCTIVE AMENDMENT OF THE INDICTMENT

■ Aubin contends that the government constructively amended the indictment by proving a conspiracy to commit tax evasion rather than a conspiracy to defraud the United States. This argument is completely without merit. The government presented evidence that Aubin and his co-conspirators agreed, among other things, not to file income tax returns for Haft, Inc. While such an agreement would constitute conspiracy to commit tax evasion, it is also completely consistent with the government's charge of conspiracy to impair or impede the lawful functions of the IRS. The fact that defendant's actions may have constituted violations of other uncharged offenses, does not make the government's presentation of evidence of such actions tantamount to a constructive amendment of the indictment.

### D. JURY INSTRUCTIONS

With regard to the charge of conspiracy to defraud the IRS, Aubin contends that the district court erred in failing to limit the evidence of overt acts in furtherance of the conspiracy the jury was allowed to consider. Aubin points to no legal authority that would have justified limiting the evidence the jury was allowed to consider. Although Aubin does point to an instruction that seems to limit the overt acts the jury could consider against his co-defendant, Fuqua, Aubin fails to show error in the jury instructions regarding the conspiracy charge against him.

Aubin also contends that the district court denied him his right to have the jury consider his defense to the charge of bank fraud. The district court refused to give an instruction that Woods owned Western and that if Woods knowingly accepted the terms of the transaction then, as a matter of law, the

parties could not have defrauded Western because Wood's knowledge would be imputed to Western. As discussed above, this requested instruction does not correctly state the law applicable to this case.

■ Aubin objects to the instruction the district court gave on this point:

> Officers, directors, or other employees of a financial institution cannot validate a fraud on the institution. Therefore, the knowledge of bank fraud by officers, directors, or other employees of the institution is not a defense to the charge of bank fraud.

This instruction does correctly state the law applicable to this case under *United States v. Saks,* 964 F.2d 1514 (5th Cir.1992).

Aubin argues, however, that this instruction precluded his defense that he relied on Wood's knowledge and therefore did not intend to defraud Western. This argument is meritless. The district court instructed the jury that good faith constituted a complete defense to an offense requiring intent to defraud. The jury was free to consider, and Aubin did in fact argue, the defense that he relied on Wood's knowledge and apparent authority and never intended to defraud or mislead Western. The jury simply rejected this defense and found an intent to defraud.

■ Aubin also complains that the jury instruction on the wire fraud offense was flawed in that it did not require the jury to agree unanimously on which victims were intentionally defrauded. However, the district court did instruct the jury, generally, that to return a verdict,

> "each juror must agree to the verdict. In other words, your verdict must be unanimous."

When the district court gives a general unanimity instruction, there is no requirement that the judge also "separately instruct the jury to unanimously agree on the intended victim." *United States v. St. Gelais,* 952 F.2d 90, 97 n. 2 (5th Cir.), *cert. denied,* 506 U.S. 965, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992).

## E. LEGAL DUTY TO DISCLOSE

■ Aubin contends that the government should have been required to prove that he had a duty to disclose the information he is alleged to have concealed. However, the government's case was not based on a mere failure to disclose; instead, it was based on affirmative concealment intended to defraud. The government produced evidence of actions designed purposely to conceal the details of the transaction and Aubin's involvement. The government's evidence, as discussed above, is sufficient to support a jury finding of specific intent to defraud. There is no requirement under the federal fraud statutes that the government prove a duty to disclose other than the legal duty not to intentionally defraud. The cases cited by Aubin are inapposite.

## F. THE GOVERNMENT'S DUTY TO DISCLOSE UNDER *BRADY*

■ In order to establish a due process violation under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the defendant bears the burden of proving that (1) evidence was suppressed by the prosecution; (2) the evidence was favorable to the defense; and (3) the evidence was material either to guilt or to punishment. *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196–97. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

■ One group of information Aubin contends was suppressed is information regarding other loans with regard to which Aubin or companies he controlled were beneficiary or borrower. This is information about which Aubin should have known. *Brady* does not require the prosecution "to conduct a defendant's investigation or to assist in the presentation of the defense's case." *United States v. Marrero,* 904 F.2d 251, 261 (5th Cir.), *cert. denied,* 498 U.S. 1000, 111 S.Ct. 561, 112 L.Ed.2d 567 (1990). The purpose of the *Brady* rule is to "ensure that a miscarriage of justice does not occur, 'not to displace the adversary system as the primary means by which truth is uncovered.'" *Unit-*

ed States v. Johnson, 872 F.2d 612, 619 (5th Cir.1989) (quoting *Bagley*, 473 U.S. at 675, 105 S.Ct. at 3380). Aubin does not show that this information was not available to him through due diligence.

Aubin also contends that the Government suppressed allegations that Reese obtained a fraudulent appraisal to support the Western funding for the LBJ/Central transaction. However, by a letter dated May 5, 1994, prior to trial, the Government disclosed this allegation.

■ Aubin also contends that the government suppressed a report of the Texas Savings and Loan Department concerning Western Savings and Loan as of December 1984. Aubin is in possession of a copy of the report and Western's response. Although Aubin contends that the report shows that the Texas S & L Department knew of his involvement in the transaction, he does not support this contention with specific citation, and he does not show any likelihood that the result of the trial would have been different if he had been in possession of this report prior to trial.

■ Aubin also contends that the Government should have disclosed FBI "302" reports of interviews with witnesses. With regard to the only witness specifically cited by Aubin, Mr. Henry, the district court reviewed the FBI interview and indicated that it was completely consistent with Henry's testimony. Therefore, it could not have been helpful for impeachment as defendant claims. Aubin has not provided any reason to believe that any 302 reports might contain favorable or material information.

■ Aubin also contends that the government should have disclosed materials in possession of the Resolution Trust Corporation supporting a letter from the RTC dated August 31, 1994, concerning the amount of restitution defendant should be ordered to pay. The letter states, among other things, that "[t]he loan arrangements were designed to deceive Western in order to obtain funds for the use of Aubin and his co-conspirators." Contrary to Aubin's contention, this letter does not reflect any underlying exculpatory information.

■ Aubin contends that the government also suppressed evidence that would have significantly impeached Reese and Woods. The record is filled with evidence that would have impeached Reese and Woods. Evidence of their participation in the scheme in question and their involvement in other criminal and fraudulent activities was presented to the jury. Other impeachment evidence, if indeed there was any, would have been merely cumulative. Thus, Aubin has not met his burden of showing that the government suppressed any material evidence in violation of *Brady*.

## G. OMISSIONS FROM THE RECORD

Aubin contends that several documents presented to the district court during trial were missing from the record on appeal. It appears that all of these documents have been the subject of motions to supplement, and now are a part of the record on appeal.

Aubin also complains that nine bench conferences conducted during the trial were not transcribed and are not part of the record on appeal. Defendant apparently has not made any attempt to determine the substance of those bench conferences and has only speculated as to their substance.

■ Where, as here, a "defendant is represented on appeal by counsel other than the attorney at trial, the absence of a substantial and significant portion of the record, even absent any showing of specific prejudice or error, is sufficient to mandate reversal." *United States v. Neal*, 27 F.3d 1035, 1044 (5th Cir.), *cert. denied*, — U.S. ——, 115 S.Ct. 530, 130 L.Ed.2d 433 (1994). This does not mean that every failure to record, no matter how "small or insignificant, will work a reversal." *United States v. Selva*, 559 F.2d 1303, 1306 n. 5 (5th Cir.1977). The trial of this case lasted approximately a month, and the transcript is approximately 3,000 pages. The mere failure to transcribe 9 bench conferences does not necessarily establish the absence of a substantial and significant portion of the record. Since Aubin has not made any showing regarding the possible substance of these bench conferences, we will

not find them to constitute a substantial and significant portion of the record.

## H. SENTENCING

Aubin contends that the district court did not adequately evaluate the calculation of the tax loss for purposes of determining his base offense level for Count 1 under the sentencing guidelines or the factual basis for the restitution order on Count 2. These arguments are without merit.

Aubin was sentenced under the United States Sentencing Guidelines (U.S.S.G.) for his conviction on Count 1, conspiracy to impede or impair the function of the IRS. A sentence imposed under the Guidelines must be upheld "so long as it is the result of a correct application of the Guidelines to factual findings which are not clearly erroneous." *United States v. McCord*, 33 F.3d 1434, 1453 (5th Cir.1994), *cert. denied*, — U.S. —, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995).

Aubin contends that there is no factual basis for the district court's calculation of the tax loss used to determine the base offense level for the Guidelines sentence imposed on Count 1. In the presentence report (PSR), the probation officer assigned to the case set forth a calculation of the tax loss and indicated that the calculation was based on information received from IRS investigative agents. A district court is entitled to rely on information in the PSR if it has "some minimum indicium of reliability." *United States v. Morris*, 46 F.3d 410, 425 (5th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 2595, 132 L.Ed.2d 842 (1995). The district court reasonably concluded that the information provided by the agents who investigated the case was reliable.

Aubin bore the burden of demonstrating that the information in the PSR was inaccurate. *United States v. Vela*, 927 F.2d 197, 201 (5th Cir.), *cert. denied*, 502 U.S. 875, 112 S.Ct. 214, 116 L.Ed.2d 172 (1991). Aubin does not point to any evidence that would have met that burden, and completely fails to show that the district court's determination was clearly erroneous.

Aubin also contends that there is an insufficient factual basis for the restitution imposed on Count 2, bank fraud, which was a pre-guidelines offense. District courts are accorded broad discretion in ordering restitution. *United States v. Ryan*, 874 F.2d 1052, 1054 (5th Cir.1989). This Court will review a district court's determination of the amount of restitution to be paid by a defendant only for abuse of discretion. *United States v. Plewniak*, 947 F.2d 1284, 1290 (5th Cir.1991), *cert. denied*, 502 U.S. 1120, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992).

In the initial PSR, the probation officer noted that the loss to the RTC had not yet been determined, but estimated the loss to be approximately $43,000,000. The RTC's subsequent letter to the probation officer provided calculations demonstrating losses from Aubin's bank fraud of $22,529,484.30 in principal, and $21,244,067.95 in accrued interest, for a total loss of $43,773,552.25. The district court ordered restitution in this amount. Under the circumstances, we find that the RTC's letter provided an adequate factual basis for the district court's restitution order. The district court's restitution order was not an abuse of discretion.

## III. CONCLUSION

For the reasons given above, defendant Aubin's convictions and sentence are AFFIRMED.