**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

—————————————

No. 96-60277

—————————————


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

DWIGHT DIXON; STANLEY KNOX,

Defendants-Appellants.

———————————————————

Appeals from the United States District Court
for the Northern District of Mississippi

———————————————————

December 29, 1997

Before MAGILL,[*] SMITH, and DeMOSS, Circuit Judges.

MAGILL, Circuit Judge:


Appellants Stanley Knox and Dwight Dixon were convicted of various federal offenses related to their participation in a drug trafficking conspiracy. Appellants appeal their convictions and sentences, raising a torrent of legal challenges. We vacate Knox's conviction for conspiracy and affirm the district court in all other respects.

I.

_____

[*] Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Between 1992 and 1995, appellant Stanley Knox operated a large cocaine distribution organization in Tippah County, Mississippi. Knox's organization consisted of over nine members who worked under Knox's direction to obtain, transport, and distribute crack and powder cocaine. Knox used his own residence as the distribution center and headquarters for the organization. Knox employed several dealers, including appellant Dwight Dixon, to sell crack cocaine from Knox's house and to deliver crack cocaine to customers at other locations. Knox and his dealers sold crack cocaine twenty-four hours per day, seven days per week.

Knox arranged, participated in, and directed several trips to pick up cocaine from Memphis and Nashville, Tennessee, for distribution in Tippah County. These trips were taken several times per week, and sometimes every other day, and Knox's organization garnered between two and three ounces of cocaine on each trip. If Knox or his runners obtained powder cocaine on a trip, then Knox would supervise cooking the powder cocaine into crack cocaine for future sale. Knox, himself, made at least four trips to Nashville and picked up between six and nine ounces of cocaine on each trip. Dixon made at least one trip with Knox to Memphis to pick up two ounces of cocaine. In July 1994 two of Knox's runners, Mitchell Knox (Mitchell) and Barry Cook, were arrested while returning from Memphis after obtaining three ounces of cocaine for Knox. At the time, Cook and Mitchell were driving Knox's white Mercedes, which displayed a license plate for a different vehicle registered to Dixon.

Local, state, and federal authorities investigated Knox's and Dixon's activities by using undercover agents and informers. The agents and informers made numerous controlled drug buys directly from either Knox, Dixon, or other members of Knox's organization. Most of the controlled drug buys were performed at Knox's house, although some were performed at other locations in accordance with Knox's directions.

On June 22, 1995, a grand jury issued a twenty-three count indictment against ten defendants for various drug and firearm violations. Dixon was charged with one count of conspiracy to possess with intent to distribute cocaine base between 1991 and 1995, in violation of 21 U.S.C. § 846. Knox, in addition to being charged with the conspiracy count, was charged with one count of unlawfully engaging in a continuing criminal enterprise (CCE) from 1992 to March 1995, in violation of 21 U.S.C. § 848. Knox also was charged with eight counts of possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841,[1] two counts of using and carrying firearms in relation to drug trafficking, in violation of 18 U.S.C. § 924(c),[2] ten counts of using the telephone to facilitate the commission of a felony under 21 U.S.C. § 841, in violation of 21 U.S.C. § 843,[3] and one count of attempted possession of cocaine, in violation of 21 U.S.C. §§ 841 and 846.

After Knox and Dixon's indicted codefendants entered plea

---

[1] The government dismissed three of these counts during trial.

[2] The government dismissed these counts during trial.

[3] The government dismissed one of these counts during trial.

3

bargains with the government, the government proceeded to trial against Knox and Dixon. The government dismissed several counts against Knox during trial, and the jury ultimately returned verdicts of guilty against both Knox and Dixon on all remaining counts. The district court sentenced Knox to life imprisonment[4] and sentenced Dixon to 240 months imprisonment. Knox and Dixon raise numerous issues on appeal concerning both their convictions and their sentences.

## II. DOUBLE JEOPARDY

Knox contends that his convictions for both participating in a drug conspiracy and engaging in a CCE violate the Double Jeopardy Clause of the Fifth Amendment. We review Knox's double jeopardy claim de novo. *See United States v. Fields*, 72 F.3d 1200, 1209 (5th Cir.), *cert. denied*, 117 S. Ct. 48 (1996).

Count one of the indictment charged Knox with participating in a drug conspiracy under 21 U.S.C. § 846 and alleged that the conspiracy existed from 1991 through 1995. Count two of the indictment charged Knox with engaging in a CCE under 21 U.S.C. § 848 and alleged that the CCE existed from 1992 through 1995. The jury convicted Knox on both counts, but the district court only imposed sentence on Knox for his CCE conviction.

As the government concedes, a conviction under both the

---

[4] Knox was sentenced to life imprisonment on the CCE count, and he received concurrent sentences of various terms on his remaining convictions. The district court initially also sentenced Knox to a concurrent 240-month sentence for the conspiracy count, but specifically rescinded the sentence because the conspiracy was a lesser included offense of the CCE.

4

conspiracy and the CCE statutes is unconstitutional where the alleged CCE is the same enterprise as the conspiracy. *See Rutledge v. United States*, 116 S. Ct. 1241, 1247 (1996); *Fields*, 72 F.3d at 1209-10. Because we agree that the alleged CCE is the same enterprise as the conspiracy, this Court vacates Knox's conviction for drug conspiracy under count one of the indictment.[5] *See Fields*, 72 F.3d at 1209-10 (vacating drug conspiracy conviction when defendant unconstitutionally convicted of both drug conspiracy and engaging in a CCE).

Despite vacating Knox's drug conspiracy conviction, it is not necessary to remand this case for resentencing. Where it is clear that the drug conspiracy conviction did not lead the district court to impose a harsher sentence on Knox for engaging in a CCE than it would have in the absence of the drug conspiracy conviction, there is no need to remand for resentencing. *See id*. at 1210. Here, Knox has not even been sentenced for the conspiracy conviction. Clearly, the conspiracy conviction did not affect Knox's sentence for the CCE conviction.

## III. EVIDENTIARY ISSUES

"Evaluating the admissibility of evidence is a matter within the sound discretion of the district court." *United States v.*

---

[5] Knox contends that his CCE conviction should also be vacated because evidence introduced to prove Knox's participation in the conspiracy was irrelevant to Knox's engagement in the CCE and was extremely prejudicial to Knox. This contention is absurd. Evidence relevant to proving Knox's participation in the conspiracy clearly is relevant to proving Knox's engagement in the CCE because the conspiracy, as a lesser included offense of the CCE, comprises the same enterprise as the CCE. *See United States v. Fields*, 72 F.3d 1200, 1209-10 (5th Cir.), *cert. denied*, 117 S. Ct. 48 (1996).

5

*Sparks*, 2 F.3d 574, 582 (5th Cir. 1993). Accordingly, when a defendant properly objects to the admission of evidence, the district court's decision to admit such evidence is reviewed for an abuse of discretion. *See, e.g., United States v. Bermea*, 30 F.3d 1539, 1574 (5th Cir. 1994); *Wilson v. Zapata Off-Shore Co.*, 939 F.2d 260, 272 (5th Cir. 1991).

A.    Knox's Possession of Firearms

Knox contends that the district court abused its discretion in allowing the government to introduce evidence that he possessed firearms. This Circuit has explicitly "recognized that firearms are 'tools of the trade' of those engaged in illegal drug activities and are highly probative in proving criminal intent." *United States v. Martinez*, 808 F.2d 1050, 1057 (5th Cir. 1987); *see also United States v. Beverly*, 921 F.2d 559, 562 (5th Cir. 1991) ("[t]here is also no doubt that firearms are drug traffickers' tools of trade"). Accordingly, we find that the district court did not abuse its discretion in admitting this evidence.

B.    Exhibit 26--Bag of Crack Cocaine

Knox also contends that the district court abused its discretion in admitting a bag of crack cocaine--exhibit 26--because the government failed to establish the chain of custody with respect to the bag. Two government witnesses, Captain Eddie McCullough and Agent Jeff Palmer, each testified that they delivered the bag of cocaine directly to the crime lab. Palmer

testified that McCullough delivered the bag directly to Palmer, and that McCullough was mistaken when he testified that he delivered the bag directly to the crime lab. Knox contends that this contradictory testimony renders the bag of cocaine inadmissible. We disagree.

As this Circuit has explained, a "break in the chain of custody simply goes to the weight of the evidence, not its admissibility." *Sparks*, 2 F.3d at 582; *see also Bermea*, 30 F.3d at 1574. Accordingly, even if the apparent contradiction between Palmer's and McCullough's testimonies supports an inference of a break in the chain of custody--a proposition we doubt--the district court did not abuse its discretion in admitting the bag of cocaine.[6]

C. Exhibit 31--Tire Town, Inc.'s Business Records

Both Knox and Dixon contend that the district court abused its discretion in admitting pager-rental records of Tire Town, Inc. During cross-examination, Tire Town's owner conceded that he did not personally create the records and that he did not personally know whether the records were true or accurate. Tire Town's owner

---

[6] Knox also argues that the district court abused its discretion by admitting exhibit 32--a different bag of cocaine confiscated from Knox--because of a break in the chain of custody. Knox relies on the admission by two witnesses in the chain of custody that they never initialed the bag of cocaine and thus could not be one hundred percent positive that the substance in the bag was, in fact, the substance confiscated from Knox. Each witness did, however, testify from whom they received the bag and to whom they provided the bag, and established their respective links in the chain of custody. Accordingly, the lack of initials does not render the bag of cocaine inadmissible. *See United States v. Sparks*, 2 F.3d 574, 581-82 (5th Cir. 1993) (district court did not abuse discretion by admitting into evidence two bottles of crack despite officer's testimony that he never initialed the bottles).

7

did, however, substantiate that the records were business records within the definition of Federal Rule of Evidence 803(6) and testified that he relied on the accuracy of these records in the ordinary course of business.  This Court has held that

> [a]ny person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records.

*Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980). Accordingly, the district court did not abuse its discretion in admitting Tire Town's business records.  *See Bermea*, 30 F.3d at 1574 (holding that the district court not abuse its discretion by admitting records under Fed. R. Evid. 803(6) even though the custodian of records admitted "that she did not know whether the records had been maintained in their original form or altered in any way"); *Wilson*, 939 F.2d at 272 (holding that the district court did not abuse its discretion by admitting records under Fed. R. Evid. 803(6) despite the custodian of records's failure to testify that the records were accurate).

D.   Tape Recorded Conversations Between Knox and Myrtle Bennett

Both Knox and Dixon contend that the district court abused its discretion in admitting tape recordings made of telephone calls between Knox and Myrtle Bennett, a previously cooperative government informant, while arranging a controlled drug sale. Appellants argue that the tape recorded conversations are inadmissible hearsay and, because Bennett refused to testify during

8

trial, that the district court's admission of the tape recordings violated their Sixth Amendment right to confront Bennett. We disagree.

We first point out that neither Knox's nor Bennett's recorded statements are inadmissible hearsay. Knox's recorded statements are not hearsay because they constitute party admissions under Federal Rule of Evidence 801(d)(2)(A). *See United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995); *United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988). Bennett's recorded statements, rather than offered to prove their truth, are admissible to prove that they were uttered, and thus do not constitute hearsay.[7] *See Gutierrez-Chavez*, 842 F.2d at 81.

With respect to appellants' Sixth Amendment concerns, this Court recently held that tape recordings made of conversations between an unavailable informant[8] and a defendant are admissible and do not violate the Sixth Amendment confrontation clause if the tapes are supported by adequate indicia of reliability. *See Cheramie*, 51 F.3d at 540-41; *Gutierrez-Chavez*, 842 F.2d at 81. In this case, the government provided adequate indicia of each recording's reliability. First, Agent Rod Waller was present while the conversations between Bennett and Knox occurred. Second,

---

[7] Even if Bennett's recorded statements are hearsay, they are admissible to put Knox's statements into context. *See United States v. Cheramie*, 51 F.3d 538, 541 (5th Cir. 1995); *United States v. Gutierrez-Chavez*, 842 F.2d 77, 81 (5th Cir. 1988).

[8] Because Bennett refused to testify on the basis of the Fifth Amendment, she became "unavailable" within the definition of Federal Rule of Evidence 804(a).

Waller was the person who dialed Knox's phone number for each recorded phone call. Third, Waller testified that each recording contained the same statements that Bennett asserted during the respective telephone conversations. Fourth, Waller identified Knox's voice as the voice engaging in dialogue with Bennett during the recorded telephone conversations. Fifth, a controlled drug deal occurred in accordance with instructions provided by Knox to Bennett during one of the recorded phone conversations. Under these circumstances, we hold that the recordings are supported by adequate indicia of reliability, *see Cheramie*, 51 F.3d at 541 (listing factors supporting a finding of adequate indicia of reliability), and that the district court did not abuse its discretion in admitting the tapes into evidence.

E.   Drug Sale and Tape Recorded Conversation Between Dixon and Dennis Roberson

Dixon also contends that the district court abused its discretion in admitting evidence of a drug sale between Dixon and Dennis Roberson, a government confidential informant, and in admitting a tape recording of the conversation between Dixon and Roberson during the drug sale. Dixon argues on appeal that the government failed to prove that the drug sale was relevant to his participation in the drug conspiracy, and thus inadmissible, and that the tape recording constitutes inadmissible hearsay. We disagree.

Whether Dixon's sale of drugs to Roberson was an act in

10

furtherance of the conspiracy charged in the indictment, rather than an independent drug sale, is a question of fact for the jury. *See United States v. Morgan*, 117 F.3d 849, 858 (5th Cir.) (holding that "[w]hether the evidence shows one or multiple conspiracies is a question of fact for the jury"), *cert. denied*, 66 U.S.L.W. 3355 (U.S. Nov. 17, 1997) (No. 97-6370). The district court did not abuse its discretion in admitting evidence of Dixon's drug sale to Roberson.

With respect to the tape recording's admissibility, Dixon's recorded statements are admissible as a party admission under Federal Rule of Evidence 801(d)(2)(A), and Roberson's recorded statements, even if considered hearsay, are admissible to put Dixon's statements into context. *See Cheramie*, 51 F.3d at 541; *Gutierrez-Chavez*, 842 F.2d at 81. Accordingly, the district court did not abuse its discretion by admitting the tape recording.

## IV. APPELLANTS' *BRADY* CLAIM

Knox and Dixon both contend that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to produce Knox's financial records and car titles, which the government seized while executing a search warrant. Knox argues that such evidence would have helped him contest the government's allegation that Knox derived substantial income from the sale of drugs, which is an essential element of his CCE conviction. Dixon argues that such evidence would have demonstrated his legitimate ownership of a Suzuki Samurai Sidekick and that he would thus be exonerated.

11

This Court reviews the district court's *Brady* determination de novo. *See United States v. Green*, 46 F.3d 461, 464 (5th Cir. 1995). To establish a due process violation under *Brady*, a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment. *See Brady*, 373 U.S. at 87; *United States v. Aubin*, 87 F.3d 141, 148 (5th Cir. 1996), *cert. denied*, 117 S. Ct. 965 (1997). However, *Brady* does not obligate the government "to produce for [a defendant] evidence or information already known to him, or that he could have obtained from other sources by exercising reasonable diligence." *Brown v. Cain*, 104 F.3d 744, 750 (5th Cir.), *cert. denied*, 117 S. Ct. 1489 (1997). Accordingly, to prevail in their *Brady* claim, Knox and Dixon must show that the allegedly suppressed information was not available to them through due diligence. *See Aubin*, 87 F.3d at 149.

Neither Knox nor Dixon has demonstrated that the information contained in Knox's financial records and car titles was not available to him through his own due diligence.[9] Knox asserts that the seized evidence contained information about the income he received from buying and selling used cars. This is information about which Knox should have known, and Knox has not shown that this information was not available to him through due diligence. Dixon asserts that the suppressed evidence contained information

---

[9] Neither Knox nor Dixon even argues that he could not have obtained the information through his own due diligence.

12

about his ownership of the Suzuki.  As with Knox, this is information about which Dixon should have known, and Dixon has not shown that this information was not available to him through due diligence.  Accordingly, the government did not violate *Brady*.


V.  SUFFICIENCY OF THE EVIDENCE

When reviewing a claim for insufficiency of the evidence, this Court must determine whether, based on the totality of the evidence presented at trial, a rational jury could have found that the government proved the essential elements of the crimes charged beyond a reasonable doubt.  *See United States v. Davis*, 61 F.3d 291, 296 (5th Cir. 1995).  While making this determination, this Court must consider the evidence in the light most favorable to the government, including all reasonable inferences that may be drawn therefrom.  *See United States v. Bermea*, 30 F.3d 1539, 1551 (5th Cir. 1994).


A.   The CCE Conviction

Knox challenges the sufficiency of the evidence to support his CCE conviction.  A person engages in a CCE if:

> (1) he violates any provision of [title 21] the punishment for which is a felony, and

> (2) such violation is part of a continuing series of violations of [title 21] --

>> (A) which are undertaken by such persons in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

13

         (B) from which such person obtains substantial
         income or resources.

21 U.S.C. § 848(c).

The testimony at trial established that Knox was the leader of a large crack and powder cocaine distribution conspiracy that operated between 1992 and 1995, employed more than five people at any given time, and made significant sums of money from the conspiracy. While much of the testimony implicating Knox was from coconspirators who accepted plea bargains from the government, "[i]t is well-settled that credibility determinations are the sole province of the jury." *Davis*, 61 F.3d at 297. Indeed, "'[a] conviction may rest solely on the uncorroborated testimony of one accomplice if the testimony is not insubstantial on its face.'" *Id.* (quoting *United States v. Gibson*, 55 F.3d 173, 181 (5th Cir. 1995)). In this case, each of the witnesses testified to numerous drug runs and drug deals. Moreover, much of the testimony was corroborated by undercover agents, government informants, and taped telephone conversations. The bountiful evidence describing Knox's role in the conspiracy and the substantial income he derived therefrom was sufficient to support his CCE conviction.

B.    Use of a Communication Facility

Knox also challenges the sufficiency of the evidence to support two of his convictions under 21 U.S.C. § 843(b) for using a communication facility to facilitate the attempted distribution of cocaine. Knox contends that his convictions under counts twenty-two and twenty-three are improper because no drug

14

transactions occurred as a result of either of the predicate act telephone calls.  We disagree.

To secure a conviction under 21 U.S.C. § 843(b), the government must establish that the defendant knowingly and intentionally used a telephone to facilitate the commission of a narcotics offense.  *See United States v. Gonzalez-Rodriguez*, 966 F.2d 918, 921 (5th Cir. 1992).

> In order to establish the facilitation element, the Government must show that the telephone call comes within the common meaning of facilitate--to make easier or less difficult, or to assist or aid.  It is sufficient if a defendant's use of a telephone to facilitate the possession or distribution of controlled substances facilitates either his own or another person's possession or distribution.

*Id.* (quotations and citations omitted).  Because counts twenty-two and twenty-three of the indictment specifically charge Knox with using a communication facility to facilitate the "attempted distribution" of cocaine, the government only is required to establish that Knox used the telephone to facilitate an attempt to distribute drugs.  *See United States v. Rey*, 641 F.2d 222, 224 n.6 (5th Cir. Unit A Mar. 1981) ("[w]hen the underlying offense is an inchoate one such as attempt or conspiracy, then the attempt or conspiracy is all that must be shown . . . , and it is not necessary to show completion of the objective of that inchoate crime").

In this case, we conclude that the evidence is sufficient to support Knox's convictions under both counts twenty-two and twenty-three.  During the first telephone call on February 10, 1995 (count twenty-two), Wanda Henry, a government witness, asked Knox to sell

15

her some drugs. To complete the sale, Knox directed Henry to meet him at a store at which he sold her drugs on the previous day. Knox subsequently met Henry at the store, but did not sell her any drugs. Rather, and because he was concerned that he was being followed, Knox directed Henry to page him twenty minutes after leaving the store. Henry subsequently left the store and paged Knox approximately twenty minutes later. Knox responded to the page (count twenty-three) and directed Henry to meet him at a Wal-Mart to complete the sale. Knox, however, never showed up at the Wal-Mart. This evidence is sufficient for a reasonable jury to determine that Knox twice attempted to sell drugs to Henry, and that Knox used the telephone to facilitate each attempt.

C.   The Drug Conspiracy Conviction

Dixon challenges the sufficiency of the evidence to support his drug conspiracy conviction. To support a drug conspiracy conviction, the government must establish "(1) the existence of an agreement between two or more persons to violate narcotics law; (2) the defendant's knowledge of the agreement; and (3) the defendant's voluntary participation in the agreement." *United States v. Gonzalez*, 76 F.3d 1339, 1346 (5th Cir. 1996). "A jury may infer the elements of a conspiracy conviction from circumstantial evidence: An agreement to violate narcotics laws may be inferred from concert of action. Knowledge of the conspiracy may be inferred from a collection of circumstances." *United States v. Leal*, 74 F.3d 600, 606 (5th Cir. 1996) (quotations and citations

16

omitted). In addition, "[a]lthough mere presence at the scene of the crime or close association with a coconspirator will not support an inference of participation in a conspiracy, a defendant's voluntary participation may be inferred from a development and a collocation of circumstances." *United States v. Vergara*, 687 F.2d 57, 61 (5th Cir. 1982) (quotations and citations omitted).

In this case, there is abundant evidence supporting the existence of a drug conspiracy. The case also teems with evidence showing that Dixon knew of and voluntarily participated in the conspiracy. Several witnesses[10] testified that Dixon worked in Knox's organization, buying, delivering, and selling crack and powder cocaine. For example, Scott Riddle, one of Knox's cousins and drug sellers, testified that Dixon sold crack cocaine at Knox's house and that Dixon made trips to pick up cocaine for Knox. Rhonda Simmons, a coconspirator, testified that Dixon delivered crack cocaine for Knox. James Rutherford testified that he had dealt with Dixon when purchasing crack cocaine at Knox's house. Virginia Cowan testified that she bought crack cocaine from Dixon at Knox's house. Diane Graham, whose husband bought and sold drugs for Knox, testified that Dixon worked for Knox. In addition, Knox

---

[10] Dixon argues that many of the witnesses who testified against him were coconspirators who received plea bargains, whose testimony was not credible, and some of whose testimony was not corroborated by non-coconspirators. As explained above, however, "[i]t is well-settled that credibility determinations are the sole province of the jury." *United States v. Davis*, 61 F.3d 291, 297 (5th Cir. 1995). Accordingly, "non-credibility is generally not a sound basis for alleging insufficiency of the evidence; it is the jury's function to determine credibility." *United States v. Payne*, 99 F.3d 1273, 1278 (5th Cir. 1996) (quotations and citations omitted).

17

provided a pager to Dixon, and Dixon's license plate was affixed to Knox's car when two of Knox's drug runners were arrested. Furthermore, Dixon traveled with Knox on at least one occasion to Mississippi to pick up several ounces of cocaine. This evidence is sufficient to support Dixon's conspiracy conviction.

VI.   SENTENCING ISSUES

Knox and Dixon appeal the sentences imposed by the district court under the United States Sentencing Guidelines. This Court reviews the district court's application of the Sentencing Guidelines de novo and the district court's factual findings for clear error. *See United States v. West*, 58 F.3d 133, 137 (5th Cir. 1995). "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." *United States v. Thomas*, 12 F.3d 1350, 1368 (5th Cir. 1994) (quotations and citations omitted).

A.   Firearm Enhancement

Knox and Dixon both contend that the district court's two-level enhancement for possession or use of a dangerous weapon, under U.S.S.G. § 2D1.1(b)(1), was clearly erroneous. The enhancement is appropriate if a firearm "was possessed during the course of manufacturing, importing, exporting, or trafficking in narcotics, including attempting or conspiring to do so." *United States v. Gaytan*, 74 F.3d 545, 559 (5th Cir.), *cert. denied*, 117 S. Ct. 77, *and cert. denied*, 117 S. Ct. 506 (1996). The district

18

court's decision to enhance the sentence level for firearms is a factual determination reviewed for clear error, *see United States v. Brown*, 985 F.2d 766, 769 (5th Cir. 1993), and may be supported by "any relevant evidence that has sufficient indicia of reliability to support its probable accuracy." *United States v. Buchanan*, 70 F.3d 818, 828 (5th Cir. 1995) (quotations and citations omitted). However, the applicability of the enhancement must be proved by a preponderance of the evidence. *United States v. Devine*, 934 F.2d 1325, 1339 (5th Cir. 1991).

In this case, the evidence clearly indicates that Knox possessed firearms during the course of the CCE. Virginia Crum, Knox's former girlfriend, testified that Knox traveled to Memphis two to three times each week to pick up cocaine and that Knox carried a gun on nearly every trip. In addition, both Larry Cox, one of Knox's coconspirators, and Diane Graham, the wife of one of Knox's coconspirators, testified that guns were kept at Knox's house. Furthermore, Mike Edlemon, a government investigator, testified that he saw firearms carried by Knox's coconspirators while they were selling drugs to customers in Knox's driveway.

The evidence also clearly indicates that the district court did not err in enhancing Dixon's sentence under U.S.S.G. § 2D1.1(b)(1). A defendant's sentence may properly be enhanced under U.S.S.G. § 2D1.1(b)(1) if the possession of a firearm by one of his coconspirators was reasonably foreseeable. *See Gaytan*, 74 F.3d at 559. This Court has explained that "[o]rdinarily, one co-conspirator's use of a firearm will be foreseeable because firearms

are 'tools of the trade' in drug conspiracies." *United States v. Mergerson*, 4 F.3d 337, 350 (5th Cir. 1993) (citation omitted). In this case, the evidence demonstrates that Dixon distributed drugs at Knox's house, and that firearms were kept and carried in Knox's house in connection with drug activities. In addition, Dixon traveled to Memphis with Knox on at least one occasion to pick up drugs, and Knox carried firearms on nearly every trip to Memphis.

B.    Constitutionality of 21 U.S.C. § 860(a)

Knox argues that 21 U.S.C. § 860(a) is an unconstitutional extension of Congress's regulatory powers under the Commerce Clause, and that his convictions under § 860(a) should thus be vacated. This Court, however, has already rejected this argument. *See United States v. Clark*, 67 F.3d 1154, 1165-66 (5th Cir. 1995), *vacated in part on other grounds sub nom. Coffman v. United States*, 117 S. Ct. 40 (1996); *see also United States v. Allen*, 106 F.3d 695, 701 (6th Cir.) (agreeing with *Clark* that 21 U.S.C. § 860 is within Congress's commerce power), *cert. denied*, 117 S. Ct. 2467 (1997); *United States v. Lopez*, 2 F.3d 1342, 1366 n.50 (5th Cir. 1993) (indicating that 21 U.S.C. § 860 is based on the "federal authority over intrastate as well as interstate narcotics trafficking"), *aff'd*, 514 U.S. 549 (1995).

## VII.  OTHER ISSUES

Knox and Dixon raise numerous other issues in this appeal. Knox contends that the district court erred by (1) quashing his

subpoena to Probation Officer Darrell Doss, (2) limiting his cross-examination of Barry Cook and Barry Cox, (3) seating Peggy Dudley as a juror, (4) refusing to give one of Knox's proposed jury instructions, (5) merging jury instructions for different counts of the indictment, (6) refusing to grant a mistrial because Myrtle Bennett pleaded the Fifth Amendment while on the witness stand, (7) refusing to grant a mistrial because of the government's introduction of improper and prejudicial evidence, (8) refusing to grant Knox's motion for a new trial, (9) refusing to grant Knox's motion to suppress evidence concerning his possession of firearms, (10) admitting various testimony, (11) refusing to require the government to identify a non-testifying confidential informant, (12) attributing 15.65 kilograms of crack cocaine to Knox for sentencing purposes, and (13) refusing to find that Knox was subject to sentencing entrapment for selling drugs within 1000 feet of a high school. Dixon incorporates each of Knox's allegations of error by reference and further contends that the district court erred by (1) refusing to grant Dixon's motion for a new trial, (2) refusing to give Dixon's proposed jury instructions, (3) limiting Dixon's objections, (4) attributing 11.79 kilograms of crack cocaine to Dixon for sentencing purposes, (5) refusing to grant Dixon a downward departure as a minimal or minor participant, (6) refusing to grant Dixon a downward departure because his coconspirators, who cooperated with the government, received lighter sentences, (7) refusing to reduce Dixon's offense level based on Dixon's acceptance of responsibility, and (8) refusing to

hold that the disparity between sentences for crack cocaine and powder cocaine is unconstitutional. After carefully reviewing the record, we determine that each of the arguments is meritless under the established law of this Circuit and does not require discussion. *See United States v. Allen*, 76 F.3d 1348, 1357 (5th Cir.) (summarily affirming district court and refusing to discuss meritless arguments), *cert. denied*, 117 S. Ct. 121 (1996).

## VIII. CONCLUSION

For the foregoing reasons, we VACATE Stanley Knox's conviction on count one (conspiracy), and AFFIRM the district court in all other respects.

VACATED IN PART AND AFFIRMED IN PART.