NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-2938

———————————

UNITED STATES OF AMERICA

v.

CRAIG L. BITTERMAN, a/k/a Gary Swift, a/k/a Tip Long,
a/k/a B. L. Martin, a/k/a John Stoltzfus

Craig L. Bitterman,
                                    Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 5-09-cr-00772-001)
District Judge: Honorable James Knoll Gardner

———————————

Argued June 13, 2016

Before: AMBRO, JORDAN, and GREENBERG, Circuit Judges

(Filed: June 29, 2016)

Dennis E. Boyle, Esq.          [Argued]
Kenneth E. Raleigh, Esq.
Fox Rothschild
1030 15th Street, NW
Suite 360 East
Washington, DC 20005
        *Counsel for Appellant*

Zane David Memeger, Esq.
United States Attorney
Bernadette McKeon, Esq.
Assistant U.S. Attorney
Acting Chief of Appeals
Vineet Gauri, Esq.    [Argued]
Assistant U.S. Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
    *Counsel for Appellee*

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Craig Bitterman appeals his conviction for conspiracy to defraud the United States and obstruction of justice. For the reasons that follow, we affirm the judgment of the District Court.

**I.**

In December 2009, Chester, Craig, C. Grant, and Curtis Bitterman were indicted for conspiracy to defraud the United States in violation of 18 U.S.C. § 371. The Government alleged that the Bittermans conspired to conceal their income and assets from the IRS. Briefly, the conspiracy consisted of moving the family business and personal assets into trust products bought from the Commonwealth Trust Company.[1] The Bittermans then acted as "managers" of the trusts but continued to benefit from trust

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Commonwealth Trust Company was a target of a separate criminal investigation, resulting in the conviction of its founder and several of its employees.

2

property.  Craig Bitterman was separately charged with obstruction of justice in violation of 18 U.S.C. § 1503 in connection with his response to a grand jury subpoena.

After a jury trial in October 2010, the Bittermans were convicted on all counts. They filed post-trial motions arguing, among other things, that an evidentiary error at trial and the Government's failure to turn over certain evidence compelled a new trial or dismissal of the indictment.  The District Court denied the post-trial motions in April 2015 and sentenced the Bittermans three months later.  Only Craig Bitterman has appealed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231 and we have jurisdiction over Bitterman's appeal under 28 U.S.C. § 1291.

We review the District Court's decision to admit or exclude evidence for abuse of discretion, which exists if the decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *United States v. Schneider*, 801 F.3d 186, 198 (3d Cir. 2015) (internal quotation marks omitted).  Our review of the District Court's denial of a motion for a new trial based on the Government's failure to turn over favorable evidence is mixed.  We review conclusions of law *de novo* and findings of fact for clear error.  *United States v. Georgiou*, 777 F.3d 125, 138 (3d Cir. 2015).

## III.

Bitterman first argues that the admission of certain testimony at trial violated Rule 1002 of the Federal Rules of Evidence.  The so-called "best evidence rule" provides that

3

"[a]n original writing, recording, or photograph is required in order to prove its contents unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. At trial, a Government witness was permitted to testify to the contents of a handbook that Commonwealth Trust Company produced for its customers. The witness testified, over Bitterman's objection, that the handbook contained advice on how to avoid detection by the Government. The District Court concluded at trial that the Government was not required to produce the handbook itself because Commonwealth was a co-conspirator of the Bittermans and the handbook was thus admissible as a statement of a co-conspirator under Rule 801(d)(2)(E). The Court reaffirmed this conclusion in denying Bitterman's post-trial motion and added in the alternative that any error was harmless.

We agree with Bitterman that the District Court abused its discretion in permitting the Government's witness to testify on the contents of the Commonwealth handbook, but agree with the Court that the error was harmless. Rule 1002 requires the proponent of evidence to introduce an original writing in order to prove the contents of the writing "unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Rule 801(d)(2)(E), which sets out the admissibility of co-conspirator statements as non-hearsay, is not an exception to Rule 1002. Accordingly, the Government should have been required to introduce the handbook.

That said, the error was harmless because "it is highly probable that [it] did not contribute to the judgment." *United States v. Moreno*, 809 F.3d 766, 776 (3d Cir. 2016) (internal quotation marks omitted). During the defense case, Bitterman introduced the "Commonwealth Trust Company Home Study Course," the contents of which closely

4

tracked the testimony of the Government's witness. In other words, Bitterman himself ended up introducing the writing that the Government should have introduced in the first place and, after comparing the testimony of the Government's witness with the writing, we are satisfied that the witness's testimony was accurate. Moreover, Bitterman has made no serious attempt to explain how the testimony of this witness had any effect on his guilty verdict. In these circumstances, the admission of the testimony in violation of the best evidence rule was harmless.

Bitterman next argues that the Government deprived him of a fair trial by failing to turn over favorable evidence in a timely way. Before trial, the Government produced to Bitterman approximately one million pages of discovery materials. The Government also made available for inspection at the IRS offices in Philadelphia 70 boxes of documents seized pursuant to search warrants executed during the investigation of Commonwealth Trust Company. Neither Bitterman nor his counsel inspected the boxes before trial. After trial, Bitterman discovered that the Government had failed to turn over 13 CDs containing roughly 100,000 pages of discovery materials produced during the prosecution of Commonwealth's founder and key employees. Bitterman filed a post-trial motion alleging a *Brady* violation based on the Government having failed to turn over discovery from the Commonwealth prosecution and having misled Bitterman about the relevance of the 70 boxes of seized documents. The District Court held an evidentiary hearing in August 2011.[2]

_____

[2] In June 2012, the Government discovered additional materials that it had failed to turn over before trial, including memoranda of interviews, transcripts of recordings, and grand

Under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Government has an obligation to disclose "evidence favorable to an accused" so long as it is "material either to guilt or to punishment." "To establish a due process violation under *Brady* . . . 'a defendant must show that: (1) evidence was suppressed; (2) the suppressed evidence was favorable to the defense; and (3) the suppressed evidence was material either to guilt or to punishment.'" *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005) (quoting *United States v. Dixon*, 132 F.3d 192, 199 (5th Cir. 1997)).

We agree with the District Court that the Government failed to turn over, and thus suppressed, the 13 CDs from the Commonwealth prosecution. The Government claims that diligent defense counsel would have uncovered the CDs before trial, but the diligence of defense counsel is largely irrelevant to the Government's *Brady* obligation. *See Banks v. Dretke*, 540 U.S. 668, 695 (2004) (defendants are not required to "scavenge for hints of undisclosed *Brady* material when the prosecution represents that all such material has been disclosed"). We also agree with the District Court that the Government did not suppress the 70 boxes at the IRS offices because it made the boxes available for inspection and did not mislead Bitterman or his counsel about their potential value to the defense. *See Pelullo*, 399 F.3d at 212-13.

Because neither party takes issue with the District Court's finding that the suppressed evidence was favorable, we turn next to the question of materiality. The "touchstone of materiality is a 'reasonable probability' of a different result." *Kyles v.*

_____

jury testimony from several Government witnesses. Bitterman does not allege, however, that any of these materials support a *Brady* violation.

6

*Whitley*, 514 U.S. 419, 434 (1995). Though the mere fact of the Government's failure to turn over discovery from the Commonwealth prosecution was concerning, the Court concluded that Bitterman had not shown any suppressed evidence was material to his guilt or punishment. We agree. The core of Bitterman's defense at trial was that he acted in good faith because he relied on statements from Commonwealth Trust Company that its tax avoidance strategy was legal. None of the evidence discovered after trial would have changed or significantly bolstered that defense.

Bitterman's arguments relating to materiality do not suggest the reasonable probability of a different result at trial. He cites several documents the Government failed to turn over that discuss the trustees Commonwealth used to "administer" the trusts. Bitterman contends that he could have used these documents at trial to argue that the trustees were acting as proper fiduciaries. But the trustee documents are cumulative of others Bitterman presented at trial indicating that Commonwealth's public position was that its operation was above board. Moreover, the Government presented evidence that the trustees were not acting as proper fiduciaries and that Bitterman made decisions about how to use trust assets without consulting the trustees. Bitterman also argues that he could have used the trustee documents to locate trustees to call as defense witnesses. This argument fails because Bitterman had the names of trustees before trial but declined to call any as a witness.

Bitterman next claims that an email from Commonwealth would have helped him fight the obstruction of justice charge. In the email, Constance Taylor, a member of Commonwealth's Executive Board, summarized a conversation she had with Bitterman

7

about a grand jury subpoena. In essence, she told Bitterman that only trustees had the authority to turn over trust documents. The email also noted that Commonwealth's founder had suggested that someone tell Bitterman to ship all trust documents to Malta, where the founder was living at the time. Bitterman was charged with obstruction of justice because he shipped documents responsive to the grand jury subpoena out of state. He claims the email could have been used to argue to the jury that he was "misinformed" about his duties relating to the subpoena and thus lacked the intent to obstruct justice. But the Government presented substantial evidence that Bitterman acted in bad faith in responding to the grand jury subpoena. He was recorded saying that he could not be compelled to turn over documents that he did not have and it was thus his intention to ship trust documents to Malta—perhaps even using Christian missionaries to smuggle the documents out of the country. In the meantime, he would ship the documents to a storage facility that the Government did not know about. In the face of evidence of Bitterman's bad faith, the email from Commonwealth does not raise the reasonable probability of a different result for the obstruction-of-justice charge.

Bitterman also alleges that he could have used prior statements of Wayne Rebuck, a Commonwealth employee who cooperated with the Government and recorded several conversations with Bitterman, to impeach Rebuck's testimony. In the prior statements, Rebuck touted the legality of the trust products to other Commonwealth employees, while in his trial testimony Rebuck admitted he knew all along that the trusts were being used for tax evasion. These additional prior statements by Rebuck were cumulative because the Government provided Bitterman with ample impeachment material for

8

drawing out this inconsistency.  Indeed, Bitterman pursued this line of questioning during Rebuck's cross-examination.

Finally, Bitterman claims that copies of PowerPoint presentations from Commonwealth educating customers on the legality of their trust products would have shown a lack of criminal intent.  These presentations were cumulative of other Commonwealth materials Bitterman introduced at trial making the same dubious legal claims.

*     *     *     *     *

Bitterman has not shown that he is entitled to a new trial or dismissal of the indictment.  We therefore affirm the judgment of the District Court.