IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41083
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JORGE REYES-LUGO, aka GEORGE GARZA,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Southern District of Texas
_____
January 3, 2001

Before SMITH and DENNIS, Circuit Judges, and HARMON, District
Judge.[1]

MELINDA HARMON, District Judge:


In this appeal, Defendant-Appellant Jorge Reyes-Lugo, also

known as George Garza, appeals his sentence, imposed after his plea

of guilty to illegal re-entry in violation of 8 U.S.C. § 1326.

After examining the briefs and pertinent portions of the record,

and after considering the arguments of counsel, we find no

reversible error in the sentence that was imposed and affirm.

I.

---

[1] District Judge of the Southern District of Texas,
sitting by designation.

On September 9, 1991, Jorge Reyes-Lugo ("Reyes-Lugo") received ten years probation for aggravated assault in Criminal Number 91-CR-794-D in the 107th District Court, Cameron County, Texas. Eighteen days later, on September 27, 1991, he was deported from the United States. More than seven years later, on January 29, 1999, Reyes-Lugo was encountered by agents of the Immigration and Naturalization Service ("INS") in Brownsville, Texas, at the Cameron County Detention Center. He was in the custody of the State of Texas on a motion to revoke his probation.

The INS agents interviewed Reyes-Lugo on January 29, 1999 and a second time on February 12, 1999. During that second interview, he admitted that in 1998 he had re-entered the United States, by wading across the Rio Grande River near Brownsville, Texas.

The INS agents then performed a criminal record check and found that Reyes-Lugo had an extensive immigration and criminal record. He had been last deported from the United States on October 31, 1996, and he had not applied for readmission into the United States.

On March 11, 1999 Reyes-Lugo pled true to the allegations in the motion to revoke the 1991 probation, and was sentenced by the Texas judge to eight years imprisonment in the Texas Department of Criminal Justice, Institutional Division.

After his plea of guilty in the instant case he was interviewed on June 3, 1999 by the Probation Officer for

preparation of the Presentence Report. At that interview Reyes-Lugo accepted responsibility for the illegal re-entry in 1998 and concurred in the government's version of the factual events. He had been arrested by state officers in Raymondville, Texas on the motion to revoke his 1991 state probation. He had been transferred to the Cameron County Detention Center where he was found by the INS agents.

In the Presentence Report the probation officer calculated Reyes-Lugo's base offense level as eight and added an additional sixteen levels because he had been deported following a conviction for an aggravated felony, the 1991 aggravated assault. U.S.S.G. § 2L1.2(b)(1)(A).[2] Reyes-Lugo then received a three-level reduction pursuant to USSG § 3E1.1(a) and (b) for timely acceptance of responsibility, resulting in a net offense level of twenty-one.

Reyes-Lugo's criminal history was calculated as a V, based upon: the aggravated assault conviction in the 107th District Court, No. 91-CR-794-D;[3] the conviction for burglary of a habitation, also in the 107th District Court, Criminal Number 4124-B for which he received ten years probation on January 8, 1999; the

---

[2] U.S.S.G. § 2L1.2(b)(1)(A) reads:
(1) If the defendant previously was deported after a criminal conviction . . . , increase as follows . . . (A) If the conviction was for an aggravated felony, increase by 16 levels.

[3] As discussed above, this was the crime for which his probation was revoked on March 3, 1999 and for which he received a sentence of eight years.

3

conviction in May of 1998 for possession of a controlled substance, cocaine, in the 248th District Court, Harris County, Texas, Criminal Number 078206801010, for which he received four months imprisonment; and two convictions in state court for theft. A total offense level of twenty-one and a criminal history category of V resulted in an applicable sentencing guideline range between seventy and eighty-seven months.

United States District Judge Filemon B. Vela sentenced Reyes-Lugo on August 11, 1999 to seventy months' imprisonment. Neither the United States nor Reyes-Lugo filed an objection to the Presentence Report, and neither voiced at the sentencing hearing any reason why Judge Vela should not adopt the findings of the Presentence Report as his own, which he did.

During the allocution, the attorney for Reyes-Lugo asked that any sentence imposed by Judge Vela run concurrently with his eight-year state sentence, which had been imposed March 11, 1999. Judge Vela refused. Reyes-Lugo's counsel stated to Judge Vela that his client did not understand how it was possible that he could receive eight years on the state revocation for having returned illegally and now be facing an additional sentence for having returned illegally. Judge Vela responded that the two cases were two separate offenses. He explained, "The revocation over there arose from something that you did–had nothing to do with this case, other than points against you for having been convicted." He explained

4

further that the state revocation did not occur as a result of the federal case, but because Reyes-Lugo had been convicted of two state felonies committed while on state probation. Judge Vela sentenced Reyes-Lugo to the bottom of the guideline range, seventy months, and credited him with time served in jail awaiting disposition of his federal case.

## II.

In this appeal, Reyes-Lugo presents a two-pronged argument. He argues that Judge Vela failed to follow U.S.S.G. § 5G1.3(b) when he imposed a sentence consecutive to the eight-year state sentence because Reyes-Lugo's undischarged state sentence had already been taken into account in his federal sentence. He also argues that Judge Vela failed to follow U.S.S.G. § 5G1.3(c) because he did not state in open court his reasons for imposing a consecutive sentence. Reyes-Lugo urges that the sentence be vacated and the case be remanded for re-sentencing.

This Court reviews a district court's decision to impose a consecutive sentence rather than a concurrent sentence for an abuse of discretion. *United States v. Richardson*, 87 F.3d 706, 709 (5th Cir. 1996). This Court reviews *de novo* the district court's application of the Sentencing Guidelines. *Id*. at 710.

The record here reflects that Reyes-Lugo, although failing to object to the consecutive sentence, asked for a concurrent sentence and questioned the reasoning behind the consecutive sentence. In

5

*United States v. Hernandez*, 64 F.3d 179 (5th Cir. 1995), this Court, faced with a similar scenario, held:

> Although the specificity of Hernandez' request left something to be desired, it alerted the district court to the issue before it. This is not the case where a party completely and utterly failed to make an issue of the fact that his sentence should be imposed concurrently with an undischarged prison sentence.

*Id.* at 181. Accordingly, we hold that Reyes-Lugo raised this issue below, and his error was preserved for appeal.

Reyes-Lugo argues that the sentencing guidelines require a concurrent sentence if "the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense." U.S.S.G. § 5G1.3(b). Appellant pled guilty to illegal re-entry after being deported for committing an aggravated felony. That felony was a state conviction for aggravated assault. The Sentencing Guidelines require that if the felony committed prior to deportation was an aggravated felony, sixteen levels are to be added to the base offense level. U.S.S.G. § 2L1.2(b)(1)(A). The state court sentenced him to eight years for violation of the probation he had received for the aggravated felony. Appellant argues that the state court aggravated felony was fully taken into account in the determination of the offense level for the federal offense of illegal re-entry when the sixteen levels were added.

6

Accordingly, he argues, that § 5G1.3(b)[4] should apply, and a concurrent sentence is mandated by the Sentencing Guidelines.

The sixteen-level increase under U.S.S.G. § 2L1.2(b)(1)(A) was applied in this case because Reyes-Lugo illegally re-entered the United States after having been deported following his conviction for the aggravated felony of aggravated assault. The application of the adjustment under U.S.S.G. § 5G1.3(b) was not dependent upon the revocation of probation. This sixteen-level adjustment would have applied even if the state had chosen not to revoke the probation or had the defendant served this sentence prior to his discovery by the INS. In fact, it was the revocation of the state probation that caused Reyes-Lugo to be serving an undischarged term of imprisonment at the time of his sentencing for illegal re-entry. The state is thus sanctioning Reyes-Lugo for violating his probation. A concurrent sentence in this case would be a windfall resulting from the fact that he was originally given probation by the state, a probation which he violated. Sentencing Guideline § 5G1.3(b) does not apply. Rather, as is discussed below, Note 6 to U.S.S.G. § 5G1.3(c) is applicable.

---

[4] Sentencing Guideline § 5G1.3(b) reads:

> If subsection (a) does not apply, and the undischarged term of imprisonment resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment.

7

Reyes-Lugo's second argument is tangentially related to his first. Title 18 U.S.C. § 3584(b) requires the district judge, in the exercise of his discretion to determine whether to impose a consecutive or concurrent sentence, to consider the factors set forth in 18 U.S.C. § 3553(a). Title 18 U.S.C. § 3553(c) requires the district judge to state in open court his reasons for imposing a particular sentence. Reyes-Lugo argues that § 3553(c) therefore required Judge Vela to state in open court his reasons for imposing a consecutive rather than a concurrent sentence. Reyes-Lugo cites *United States v. Hernandez* for this conclusion, and, by implication only, argues that failure to state in open court the reasons for imposing a concurrent rather than consecutive sentence evidences a failure to consider the § 3553(a) factors.

The situation in the *Hernandez* case is very different, however, from that of the instant case. In *Hernandez*, the defendant pled guilty on June 2, 1994 to one count of a drug conspiracy. On December 6, 1993 he had pled guilty to an unrelated drug offense committed in Florida and been sentenced to eighty-four months. At his sentencing on the June 1994 plea he asked that his sentence run concurrent to the eighty-four month sentence received in Florida. The district judge gave him a 120 month consecutive sentence. There was no dispute that U.S.S.G. § 5G1.3(a) and (b) were inapplicable and that U.S.S.G. § 5G1.3(c) applied. Section 5G1.3(c) provides that "the sentence for the instant offense shall

8

be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the instant offense." U.S.S.G. § 5G1.3(c). The commentary to § 5G1.3, Application Note 3, provides guidance in applying subsection (c). The guidance offered at the time Hernandez was sentenced was that in some instances the "incremental punishment can be achieved by imposing a sentence concurrent with the remainder of the unexpired term of imprisonment." *Hernandez*, 64 F.3d at 182 (quoting U.S.S.G. § 5G1.3, app. n.3). A consecutive sentence is not, under those circumstances, required. *Id.* "To the extent practicable, the court should consider a reasonable incremental penalty to be a sentence for the instant offense that results in a combined sentence of imprisonment that approximates the total punishment that would have been imposed under § 5G1.2 (Sentencing on Multiple Counts of Conviction) had all of the offenses been federal offenses for which sentences were being imposed at the same time." U.S.S.G. § 5G1.3 app. n.3.

This Court found that non-conflicting policy statements are authoritative and that § 5G1.3(c) is a policy statement binding on the district court. *Hernandez*, 64 F.3d at 182. A district judge has no discretion to ignore this policy statement, and because Application Note 3 interprets this policy statement and explains how it should be applied, the suggested methodology of Application

9

Note 3 must be considered by the district judge when he determines if a sentence should be consecutive or concurrent. *Id.* at 183. The district court is free to reject commentary 3's methodology, but only after considering it. If he does reject the methodology, he must explain either why the calculated sentence would be impracticable or the reasons for using an alternative method. Thus, this Court recognized in *Hernandez* that the district judge had discretion to impose either a consecutive or concurrent sentence on one who is subject to an undischarged term of imprisonment, but also recognized that Congress, in 18 U.S.C. § 3584(a), had directed district judges to consider applicable guidelines and policy statements in effect at the time of sentencing. *Id.* ("[T]he district court maintains its discretion to reject the suggested methodology, but only after it has considered the methodology's possible application in reaching a reasonable incremental punishment."); *see United States v. Torrez*, 40 F.3d 84, 87 (5th Cir. 1994); *United States v. Redman*, 35 F.3d 437, 441 (9th Cir. 1994); *United States v. Coleman*, 15 F.3d 610, 613 (6th Cir. 1994).

In the instant case, however, the *Hernandez* reasoning does not apply. Judge Vela did not have discretion to impose either a consecutive or concurrent sentence. In *United States v. Alexander*, 100 F.3d 24(5th Cir. 1996), this Court held that Application Note

10

6 to U.S.S.G. § 5G1.3 mandates a consecutive sentence. Application Note 6 provides:

> If the defendant was on federal or state probation, parole, or supervised release at the time of the instant offense, and has had such probation, parole, or supervised release revoked, the sentence for the instant offense should be imposed to run consecutively to the term imposed for the violation of probation, parole, or supervised release in order to provide an incremental penalty for the violation of probation, parole, or supervised release . . . .

U.S.S.G. § 5G1.3, app. n. 6. *Alexander* followed the First, Ninth, and Eighth Circuits in holding that Application Note 6 imposes a mandatory obligation on the district court to impose a consecutive sentence. *Alexander*, 100 F.3d at 26-27; *cf. United States v. McCarthy*, 77 F.3d 522, 539-40 (1st Cir. 1996); *United States v. Gondek*, 65 F.3d 1, 2-3 (1st Cir. 1995); *United States v. Bernard*, 48 F.3d 427, 430-32 (9th Cir. 1995); *United States v. Dungy*, 1996 WL 193150, at *2 (8th Cir. April 23, 1996) (unpublished disposition). "The Note plainly states that if the defendant committed the offense while on probation and his probation has been revoked, the sentence should be imposed consecutively." *Alexander*, 100 F3d. at 27. This Court adopted the reasoning of the First Circuit in reconciling this outcome with the language of § 5G1.3(c) when we held that the Application Note "represents the Commission's determination as to what is a 'reasonable incremental punishment' in the narrow situation described in the Note." *Alexander*, 100 F.3d at 27 (quoting *Gondek*, 65 F.3d at 3).

11

Indeed, Reyes-Lugo's case is exactly that contemplated by Application Note 6. He committed the federal offense (being found in the United States after illegal re-entry) in 1999 while he was on ten years' state probation for aggravated assault received on September 9, 1991. He was deported from the United States on September 27, 1991.[5] He was "found" by the INS in the United States on January 29, 1999. His 1991 state probation was revoked on March 11, 1999, and he received an eight-year sentence. Judge Vela sentenced him on August 11, 1999.

Section 3553(c) requires that the district judge state in open court its reasons for imposing a particular sentence, but that requirement is satisfied when the court indicates the applicable guideline range and how it is chosen. *United States v. Georgiadis*, 933 F.2d 1219, 1222-23 (11th Cir. 1991). Judge Vela performed this task on the record. He adopted the justifications and recommendations in the Presentence Report, which stated the applicable guideline range and how it was chosen, and he stated that his sentence conformed to the guidelines. Nothing else was required.

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[5] He was deported again on October 31, 1996.

12