United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 19, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
_____

No. 05-50191
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIA HERNANDEZ; RUTILIO HERNANDEZ, also known as Rudy,

Defendants - Appellants.
_____

Appeals from the United States District Court
for the Western District of Texas
_____

Before: DeMOSS, BENAVIDES, and PRADO, Circuit Judges.

BENAVIDES, Circuit Judge:

Maria and Rutilio Hernandez ("Appellants") jointly appeal their convictions and sentences for six counts of conspiracy, each arising out of illegal drug activity. For the reasons below, we affirm each of Appellants' convictions and sentences.

## I. BACKGROUND

The Government charged Appellants by indictment with the following counts: (1) conspiracy to possess with intent to distribute more than 1000 kilograms of marijuana, (2) conspiracy to import more than 1000 kilograms marijuana, (3, 4, 5) three counts of conspiracy to launder monetary instruments, and (6) conspiracy to possess a firearm in furtherance of a drug trafficking crime. The charges arose out of the elaborate drug trafficking operation

of Robert W. Fansler.  According to the Government, Appellants and Fansler orchestrated and financed a multi-million dollar marijuana distribution enterprise.  The indictment alleged, *inter alia*, that Appellants' coconspirators smuggled marijuana, currency, and firearms between Mexico and the United States.  The jury convicted on all counts.  After the verdict, Appellants moved to dismiss and for a new trial on grounds of speedy trial right violations and ineffective assistance of counsel.  The district court denied the motions.

As to sentencing, the court adopted the presentence reports' guideline applications.  Appellant Maria Hernandez's Guideline range was 235 to 293 months imprisonment.  Appellant Rutilio Hernandez's Guideline range was 360 months to life imprisonment.  However, the court indicated that it would impose sentences "below the guideline range" based on the "Court's own departure."  It sentenced Maria Hernandez to six concurrent terms of 204 months imprisonment and Appellant Rutilio Hernandez to six concurrent terms of 240 months imprisonment.  This appeal followed.

## II.  DISCUSSION

### A.  Speedy Trial

Appellants' first claim is that the district court erred by denying their post-trial motions to dismiss the charges on speedy trial grounds.  Appellants make arguments under both the Speedy Trial Act, 18 U.S.C. §§ 3161–74, and under the Sixth Amendment.

2

Under both authorities, this claim fails.

## 1. Speedy Trial Act Claim

Appellants contend that their post-verdict motions to dismiss should have been granted because the Government failed to bring them to trial within seventy days. *See* 18 U.S.C. § 3161(c)(1). However, the district court properly held that Appellants waived their right to dismissal under the Speedy Trial Act because they did not move for dismissal before trial. *See* 18 U.S.C.A. § 3162(a)(2) ("Failure . . . to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal . . . .")

Despite the plain language of section 3162(a)(2), Appellants argue that Speedy Trial Act provisions are not waivable, citing *United States v. Willis*, 958 F.2d 60 (5th Cir. 1992). Contrary to Appellants' arguments, *Willis* is inapposite. *Willis* held that a particular period of delay was not excludable from the 70-day maximum simply because a defendant acquiesces to the delay. *Willis* did not address the situation here, in which the Appellants entirely failed to assert their speedy trial rights until after the verdict. Under these circumstances, section 3162(a)(2) manifestly provides that Appellants have waived the right to dismissal. *See United States v. Jackson*, 30 F.3d 572 (5th Cir. 1994).

## 2. Sixth Amendment Speedy Trial Right

Appellants also assert a constitutional speedy trial claim. In *Barker v. Wingo*, 407 U.S. 407 (1972), the Supreme Court set

3

forth a series of factors that courts should evaluate and balance in assessing such claims.  Those factors are: "(1) the length of the delay, (2) the reason for [it], (3) the defendant's diligence in asserting his Sixth Amendment right, and (4) prejudice to the defendant resulting from the delay."  *United States v. Cardona*, 302 F.3d 494, 496 (5th Cir. 2002).  A full-fledged four-factor analysis is warranted here because the total time from indictment to trial exceeded one year.  *See United States v. Frye*, 372 F.3d 729, 736-737 (2004) (discussing this Court's "one-year guideline" for whether the delay length is sufficient to call for an analysis of all four *Barker* factors).

Upon analyzing the relevant factors, the district court found no Sixth Amendment violation.  The standard of review for assessing a court's "four-factors balancing" is unresolved in this Circuit. *Id.* at 735–36.  We will assume *arguendo* that our review is *de novo*.

In undertaking a "full *Barker*-analysis," we initially look to "the first three factors (delay-length; reason for it; diligence in asserting right) in order to determine whether prejudice will be presumed or whether actual prejudice must be shown."  *Id*. at 736. Prejudice may be presumed where the first three factors weigh "heavily" in the defendant's favor.  *See United States v. Serna-Villarreal*, 352 F.3d 225, 231 (5th Cir. 2003).

As to the first factor, the fourteen-month delay here—though long enough to prompt a full *Barker* analysis—is far too short to

4

weigh in favor of presuming prejudice. *Id*. at 232. Additionally, the third factor weighs heavily in the Government's favor because Appellants failed to assert their speedy trial rights until after conviction. *Barker*, 407 U.S. at 532.

Appellants' argument focuses entirely on the second factor: the reason for the delay. Appellants contend that the Government misled the court and wrongfully obtained continuances. The Government sought continuances to secure the attendance and testimony of a Government witness, Fansler, who had absconded to Mexico prior to Appellants' trial. In arguing for a continuance, the Government represented that Fansler's testimony was "absolutely necessary" to its case. Appellants argue that this was misleading inasmuch as the Government eventually proceeded to trial and obtained a conviction without this "so-called 'essential and absolutely necessary witness.'"

Under *Doggett v. United States*, the second *Barker* factor cuts strongly in favor of a defendant where the Government acts in bad faith, intentionally holding up prosecution for the purpose of prejudicing the defendant. 505 U.S. 647, 656 (1992). Cases of "official negligence" weigh less heavily against the Government, and "the weight assigned to [negligent delay] increases as the length of the delay increases." *Serna-Villarreal*, 352 F.3d at 232 (internal quotation marks omitted).

The Government's actions do not show bad faith. The district

5

court found that the Government acted "in good faith" to secure the testimony of a material witness. According to the Government, Fansler was to testify that Rutilio and Maria Hernandez were, in fact, the "Rudy" and "Maria" frequently referred to in his drug-dealing records.[1] As the district court reasoned, the fact that the Government was eventually "forced to proceed to trial without the witness" fails to demonstrate that the Government did not honestly believe its representations that Fansler's testimony was crucial when it made those representations.

We doubt that the Government's actions amounted even to official negligence. However, assuming that they did, this would not show that prejudice should be presumed in this case. Government-sought continuances resulted only in a comparatively brief delay: 195 days.[2] The minor delay in this case, even if caused by Government negligence, would not warrant presumed prejudice. *See, e.g.*, *Robinson v. Whitley*, 2 F.3d 562, 570 (5th Cir. 1993).

Prejudice cannot be presumed because the first three *Barker* factors do not cut strongly in Appellants' favor. Appellants fail to argue that they suffered any actual prejudice. Therefore, their Sixth Amendment speedy trial claim must fail.

---

[1] Appellants' theory of the case is mistaken identity. They contend that a different "Rudy" and "Maria" were associated with Fansler's drug enterprise.

[2] Additional delay resulted from defense continuances.

B.  Use of Successor Judge

   Appellants' second claim is that they should receive a new trial because a second judge—and not their original trial judge—presided over post-trial motions and sentencing.  This claim has no merit because Federal Rule of Criminal Procedure 25(b) expressly authorizes successor judges where the original trial judge cannot perform post-trial duties.

C.  Ineffective Assistance of Counsel

   For their third claim, Appellants argue that this Court should order a new trial because they received ineffective assistance of counsel.  We decline to address this issue on direct review.  We "resolve claims of inadequate representation on direct appeal only in rare cases where the record allow[s] us to evaluate fairly the merits of the claim." *United States v. Sanchez-Pena*, 336 F.3d 431, 445 (5th Cir. 2003).  This is not such a rare case.  The issue was not fully litigated below: no evidentiary hearing was held; the documentary evidence is one-sided; and the district court did not make findings of fact or otherwise address Appellants' claims on the merits.  In short, the record is insufficiently developed for us to resolve Appellants' ineffectiveness claims at this time.[3]

_____

   [3] Appellants point out that the district court—in the course of dismissing Appellants' motions for new trial for lack of jurisdiction—opined that Appellants made "a compelling argument for a claim of ineffective assistance."  This does not change our view that the record is inadequate for resolving the claim on direct review.  Whether or not Appellants made a compelling *prima facie* argument for ineffective assistance, the underdeveloped

7

D. Sufficiency

Appellants' fourth claim is that the Government presented insufficient evidence to prove that they conspired to commit an offense under 18 U.S.C. § 924(c)(1)(A). That statute prohibits "firearm possession that furthers, advances, or helps forward [a] drug trafficking offense." *United States v. Ceballos-Torres*, 218 F.3d 409, 415 (5th Cir. 2000). Our standard of review dictates affirmance unless no rational trier of fact could have found Appellants guilty of the offense. *See, e.g.*, *United States v. Webster*, 421 F.3d 308, 311 (5th Cir. 2005).

Appellants contend that the evidence is insufficient because the Government never proved "that either Appellant ever possessed a firearm." This argument fails. The Government was not required to prove that Appellants themselves possessed a firearm since it charged them with *conspiracy* to violate the relevant statute. *See United States v. Dean*, 59 F.3d 1479, 1489 (5th Cir. 1995) (holding that a defendant may "be convicted under section 924(c) based on a co-conspirator's possession of a weapon during a drug trafficking crime" so long as that possession was foreseeable). As explored below, proof at trial showed that at least two of Appellants' coconspirators foreseeably possessed firearms.

Appellants also charge that the Government failed to prove

nature of the record does not permit us to finally resolve it on direct review.

8

that any firearms were connected to drug trafficking. We disagree. The Government presented evidence showing that federal agents found a large cache of firearms at Fansler's residence. Those firearms were found along with paperwork related to the drug-running conspiracy and $525,000 in cash. Additionally, one of Appellants' drug-smugglers, Dennis Jackson, testified that he smuggled firearms into Mexico on multiple occasions. Before one trip to Mexico, Jackson picked up firearms from Appellants' property.

The Government also presented evidence showing that smuggled firearms commonly are used in connection with drug trafficking. A federal agent testified at trial that drug smugglers often use firearms to "buy protection for the people involved in drug trafficking, including growers." The Government also adduced testimony that smuggled firearms frequently are used "as a trade and barter in lieu of money for narcotics." The Supreme Court has held that "using a firearm in a guns-for-drugs trade" shows a sufficient nexus between firearms and drug trafficking to warrant conviction under section 924(c). *Smith v. United States*, 508 U.S. 223, 236 (1993).

The jury rationally could have concluded based on the evidence presented that Appellants conspired to use firearms to further, advance, or help forward a drug trafficking offense. For these reasons, we affirm Appellants' convictions.

E.  Firearm Enhancement

As to sentencing, Appellants argue that the district court incorrectly enhanced their sentences pursuant to U.S.S.G. § 2D1.1(b)(1).  Section 2D1.1(b)(1) provides for a two-level sentencing enhancement "if a dangerous weapon (including a firearm) was possessed" in connection with a drug trafficking conspiracy. This Court reviews interpretations of the Sentencing Guidelines *de novo* and findings of fact connected to sentencing for clear error. *United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006).

In challenging the enhancement, Appellants essentially reiterate their sufficiency claims, arguing (1) that they themselves never possessed firearms and (2) that any possession was unconnected to the drug-trafficking offense.  As to the first contention, "[a] defendant's sentence may properly be enhanced under U.S.S.G. § 2D1.1(b)(1) if the possession of a firearm by one of his coconspirators was reasonably foreseeable." *United States v. Dixon*, 132 F.3d 192, 202 (5th Cir. 1997).  As explained above, the Government showed that Appellants' coconspirators possessed firearms, and that possession was foreseeable under the circumstances.  *See id.* (holding that "ordinarily one coconspirator's use of a firearm will be foreseeable because firearms are tools of the trade in drug conspiracies") (internal quotation marks omitted).  The district court did not clearly err in finding that Appellants' coconspirators foreseeably possessed a

10

firearm.

Appellants' argument that any firearm possession was unconnected to drug trafficking also fails. The Government showed a sufficient nexus between the firearms and drug trafficking to obtain a section 924(c) conviction. The showing required for a section 2D1.1 sentencing enhancement is *lower* than that required for a conviction under section 924(c). *See* U.S.S.G. § 2D1.1 cmt., n.3; *see also* ROGER W. HAINES ET AL., FEDERAL SENTENCING GUIDELINES HANDBOOK: TEXT AND ANALYSIS, 510–15 (2006 ed). For the same reasons that a rational jury probably could have found that Appellants' coconspirators used the firearms to further, advance, or help forward a drug trafficking offense, the judge did not clearly err in determining that the firearms were connected to the offense for the purposes of section 2D1.1.[4]

F. Statement of Reasons

In their second sentencing challenge, Appellants contend that the district court insufficiently explained the reasons for their sentences. Under 18 U.S.C. § 3553(c), a district court must explain "the reasons for its imposition of a particular sentence." This requirement is satisfied when the district court "indicates

---

[4] For the first time in their reply brief, Appellants argue that the Guidelines prohibit a section 2D1.1(b)(1) enhancement where the defendant is also convicted under section 924(c). We do not address this issue because Appellants effectively waived it by failing to raise it in their opening brief. *See, e.g., United States v. Jackson,* 426 F.3d 301, 304 n.2 (5th Cir. 2005).

11

the applicable guideline range and how it is chosen." *United States v. Reyes-Lujos*, 238 F.3d 305, 310 (5th Cir. 2001). The court here did so. In its statements of reasons, the court indicated the Guideline range as to each count. It also stated that it was "adopt[ing] the presentence report and guideline applications." *Id.*

Appellants argue, however, that the district court should have provided the additional, more thorough articulation required for non-Guideline sentences since it sentenced them below their Guideline ranges. *See Smith*, 440 F.3d at 707. Assuming that the district court insufficiently articulated its reasoning for giving Appellants a sentence *lower than* their Guideline ranges, any error did not prejudice Appellants.

Finally, Appellants complain that the district court failed to explicitly rule on their specific requests for downward departures before it gave them sentences below their Guideline ranges. This argument overlooks that this Court ordinarily has no jurisdiction to review a court's refusal to depart downwardly. *See United States v. Valencia-Gonzales*, 172 F.3d 344, 346 (5th Cir. 1999).[5] The jurisdictional bar applies even where the district court responds to a request for downward departure with a "summary denial

---

[5] The exception, not relevant here, is where the defendant points to something in the record indicating that the district court held an erroneous belief that it lacked the authority to depart. *Valencia-Gonzales*, 172 F.3d at 346.

without explanation" or with an implicit denial by imposing a Guideline sentence. *Id.; United States v. Alcala*, 165 Fed. App'x. 333, 334 (5th Cir. Jan. 31, 2006) (unpublished). Here, the court implicitly denied Appellants' particularized departure requests by imposing a sentence based on its own departure grounds. We have no jurisdiction to review Appellants' apparent claim that the court should have departed further. *See United States v. Alvarez*, 51 F.3d 36, 40-41 (5th Cir. 1999). In conclusion, Appellants' sentencing challenges fail.

For the reasons above, Appellants' convictions and sentences are AFFIRMED.