**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 21, 2007**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 06-20376

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

JUAN OLAYA,

Defendant-Appellant

Appeal from the United States District Court For the Southern
District of Texas, Houston Division
4-91-CR-58-2

Before HIGGINBOTHAM, DAVIS and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

In this direct criminal appeal, Juan Olaya challenges his
conviction and sentence for conspiracy and possession of cocaine.
We AFFIRM.

I.

On April 17, 1991, Juan Olaya ("Olaya") was charged along with

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

four co-defendants in a two-count indictment with conspiring to possess with intent to distribute in excess of five kilograms of cocaine and possessing with intent to distribute in excess of five kilograms of cocaine. A warrant for Olaya's arrest was issued on the date the indictment was returned. However, Olaya was not arrested until more than thirteen years later, on November 24, 2004.

On March 31, 2005, Olaya filed a motion to dismiss the indictment against him, arguing that his right to a speedy trial under the Sixth Amendment of the United States Constitution had been violated by the delay in bringing him to trial. The district court acknowledged the lengthy delay between Olaya's indictment and trial, but concluded that because the facts did not support an intentional delay or gross negligence on the part of the Government, and because Olaya had not put forth any evidence that the delay had prejudiced his defense, the motion would be denied:

> THE COURT: The [search] efforts look like they were reasonable, and unless there is some particular harm that you can point to that could have been otherwise corrected, I will deny the motion to dismiss. Is there any, other than just the passage of time, any witnesses who have died? Nobody you know of?
>
> DEFENSE COUNSEL: No. Just one of the co-conspirators, but he would not be helpful.

At trial, the Government described Olaya's participation in a large scale cocaine drug trafficking organization. Officer Raymond Montalvo, a police officer with the Houston Police Department who

2

had conducted surveillance as part of the investigation, testified that he saw Olaya at one of the locations where cocaine was found, a house at 3462 Sand Brook, on the date the drugs were recovered. In addition to cocaine, agents found two pistols in the master bedroom at the Sand Brook property.

At the conclusion of the trial, the jury found Olaya guilty of both offenses charged in the indictment.

The Presentence Investigation Report ("PSR") assigned Olaya a base offense level of 36 because his offense involved 124.96 kilograms of cocaine. The PSR recommended that Olaya's offense level be increased as follows: (1) two levels, pursuant to United States Sentencing Guidelines Manual ("USSG") § 2D1.1(b)(1), because two loaded weapons were possessed during the offense; (2) two levels, pursuant to USSG § 3B1.1(c), because Olaya was an organizer or leader of criminal activity; and (3) two levels, pursuant to USSG § 3C1.1, for obstruction of justice based on Olaya's efforts to avoid arrest. Olaya's total offense level of 42, combined with his criminal history category of I, yielded a sentencing guideline range of 360 months to life imprisonment. The district court, after sustaining Olaya's objection to the obstruction of justice enhancement, sentenced Olaya to 360 months imprisonment on each count of conviction, to run concurrently, and five years of supervised release on each count of conviction, also to run concurrently.

3

On appeal, Olaya argues that the district court erred in (1) denying his speedy trial motion; (2) applying the two level weapon enhancement; and (3) applying the two level leader/organizer enhancement.

## II.

## A.

Olaya first argues that the district court erred by denying his motion to dismiss the indictment based on a violation of his Sixth Amendment right to a speedy trial. He contends the Government failed to present any evidence justifying the delay between the filing of his indictment and his arrest.

The standard of review applicable to a speedy trial claim is unsettled in this circuit. While, we review the trial court's findings of fact made for analysis of the speedy trial right for clear error,[1] we have recently recognized that our cases have not specified the standard applicable to the district court's balancing of the various factors.[2] Both the plaintiff and the Government assert that because the district court's balancing is akin to conclusions of law or rulings on mixed questions of law and fact, it should be reviewed de novo. This case does not require us to resolve this question. We will review de novo, but if we were to review for clear error, we would obviously reach the same result:

---

[1] United States v. Serna-Villarereal, 352 F.3d 225, 230 (5th Cir. 2003).

[2] See United States v. Frye, 372 F.3d 729, 735 (5th Cir. 2004).

4

Olaya's Sixth Amendment speedy trial right was not violated.

In evaluating a defendant's claim that his right to a speedy trial has been denied, this court applies a four-factor balancing test derived from the Supreme Court's opinion in <u>Barker v. Wingo</u>.[3] We must consider: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) whether the defendant was prejudiced by the delay.[4] The first factor acts as a gatekeeper, triggering a full <u>Barker</u> analysis if the delay is over one year, and therefore considered "presumptively prejudicial."[5]   Once that threshold has been crossed, the length of the delay is considered together with factors (2) and (3) to determine whether the presumption of prejudice will be sustained.  If the first three factors weigh heavily for the defendant, or heavily against the Government, then prejudice will be presumed.  The Government, however, can avoid dismissal with evidence showing that the presumption is extenuated, as by the defendant's acquiescence in the delay, or by demonstrating that the defendant suffered no actual prejudice.[6]

1.    The Length of the Delay

In this case, the threshold prong weighs heavily in favor of

---

[3]407 U.S. 514, 530 (1972).

[4]<u>Id.</u>

[5]<u>Serna-Villarreal</u>, 352 F.3d at 230.

[6]<u>Id.</u> at 231 (citing <u>Doggett v. United States</u>, 505 U.S. 647, 658 (1992)).

defendant and against the Government.  The 13 year delay triggers a full Barker analysis.

2.    The Reason for the Delay

Evidence is sparse on the reason for the delay.  Olaya did not allege bad faith and suggested only negligence on the part of the Government.

The Government made some effort to locate defendant.  In 1991, when Olaya's indictment was issued, Dan Egeland, a special agent for the United States Bureau of Immigration and Customs Enforcement testified that he tried to locate Olaya.  Later, in 2001, a Deputy Marshall went to Olaya's wife's residence in Miami in an attempt to locate him.  Olaya was ultimately arrested on November 24, 2004 at a property owned by his wife in Houston, not far from the scene of his original offense.  The United States Marshall who found Olaya, Arthur Fernandez, explained that he had used a public database to determine what properties Olaya's wife owned in Houston.

The record also supports the view that Olaya took steps to avoid his capture.  Instead of renewing his Texas driver's license, he obtained a Florida driver's license in 1997 under the name Fernando Vargas.  In addition to the altered name, the license reported a false birth date.  This supports the district court's finding that Olaya knew of the pending charges and took steps to

evade capture.[7]

As a result of the lengthy delay between indictment and arrest and substantial gaps in the Government's active efforts to locate Olaya, the second Barker factor weighs against the Government. But because of Olaya's efforts to avoid detection, this factor does not weigh heavily against the Government.

### 3. Defendant's Assertion of Speedy Trial Rights

Olaya asserted his Speedy Trial rights within 3 months of his arrest which is ordinarily considered timely. However, the evidence that Olaya sought to avoid capture, implying that he was aware of his indictment long before his arrest, augers in favor of the Government.[8] We therefore consider this factor neutral.

### 4. Prejudice

Olaya fails to allege that he suffered any harm or actual prejudice from the delay and instead relies on what he perceives as a strong case for the presumption of prejudice. On the balance,

---

[7]The district court did not have the benefit of the trial evidence, including testimony on the previous attempts at arrest and the false document, when it made its ruling on the pretrial motion to dismiss. However, the Supreme Court has recognized that facts developed at trial are properly considered by an appellate court in reviewing a district court's pre-trial speedy trial ruling. See United States v. McDonald, 435 U.S. 850, 858 (1978) (discussing prejudice prong of Barker analysis and noting that "[t]he resolution of a speedy trial claim necessitates a careful assessment of the particular facts of the case. . . . [M]ost speedy trial claims, therefore, are best considered only after the relevant facts have been developed at trial."). Accordingly, we consider trial evidence in assessing Olaya's speedy trial claim in this case.

[8]See Doggett, 505 U.S. at 653 ("Were [it] true [that the defendant knew of his indictment years before his arrest], Barker 's third factor, concerning invocation of the right to a speedy trial, would be weighed heavily against him.").

the Barker factors weigh against the Government but not heavily against the Government. Under such circumstances, prejudice will either not be presumed or at most the presumption will be a weak one.[9] Olaya produced no evidence that his defense was prejudiced and he therefore failed to demonstrate prejudice. Further, even if we agree with Olaya's argument that the Barker factors weigh against the Government to an extent which would justify a presumption of prejudice, his counsel's frank concession in open court effectively established that Olaya suffered no prejudice from the delay.[10] Olaya's speedy trial claim fails.

## B.

Olaya next argues that the district court erred by enhancing his offense level pursuant to USSG § 2D1.1(b)(1) based on its finding that he possessed two dangerous weapons during his offense. Olaya contends that the Government failed to present any reliable evidence to support the enhancement. In his objections to the PSR,

---

[9]See United States v. Hernandez, 457 F.3d 416 (5th Cir. 2006) ("Prejudice cannot be presumed [where] the first three Barker factors do not cut strongly in [defendant]'s favor.").

[10]Defense counsel could point to no particular harm resulting from the delay:

THE COURT:     The [search] efforts look like they were reasonable, and unless there is some particular harm that you can point to that could have been otherwise corrected, I will deny the motion to dismiss. Is there any, other than just the passage of time, any witnesses who have died? Nobody you know of?

DEFENSE COUNSEL:     No. Just one of the co-conspirators, but he would not be helpful.

8

Olaya denied having lived at, or exercising control over, the 3462 Sand Brook residence where the weapons were found.

A district court's decision to enhance a defendant's sentence under § 2D1.1(b)(1) is a factual determination that this court reviews for clear error.[11]

The Sentencing Guidelines direct a sentencing court to increase by two levels the base offense level of a defendant who possessed a dangerous weapon during the manufacture, import, export, trafficking, or possession of drugs.[12] Section 2D1.1(b)(1) should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."[13] "The Government has the burden of proof under § 2D1.1 of showing by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant."[14] At sentencing, a district court may consider "any relevant evidence that has sufficient indicia of reliability to support its probable accuracy."[15] For instance, a PSR based on the results of a police investigation is sufficiently reliable to be

---

[11]United States v. Dixon, 132 F.3d 192, 201 (5th Cir. 1997).

[12]USSG § 2D1.1(b)(1); Dixon, 132 F.3d at 201.

[13]USSG § 2D1.1, cmt. n.3; United States v. Vasquez, 161 F.3d 909, 912 (5th Cir. 1998).

[14]Vasquez, 161 F.3d at 912 (internal quotation marks and citation omitted).

[15]United States v. Buchanan, 70 F.3d 818, 828 (5th Cir. 1995) (internal quotations and citation omitted).

9

considered as evidence for sentencing purposes.[16]  "If information is presented to the sentencing judge with which the defendant would take issue, the defendant bears the burden of demonstrating that the information cannot be relied upon because it is materially untrue, inaccurate or unreliable."[17]

According to the PSR, Olaya and his co-defendants were using a number of residences and vehicles to store, transport, and sell drugs including a residence at 3462 Sand Brook in which the police found 38 kilograms of cocaine and two pistols.  One of Olaya's co-defendants told police that the Sand Brook resident was rented by Olaya and that he "sort of" lived there.  Although Olaya contends that the PSR was not reliable because of its use of statements made by his co-defendants, this court has previously determined that such statements, if unrebutted, can be considered.[18]  Olaya's objections to the PSR were made in the form of unsworn assertions and thus did not suffice as competent rebuttal evidence.[19] Moreover, the district court's factual findings as set forth in the PSR are supported by testimony elicited at trial.  Officers testified that they seized cocaine and two weapons from the Sand

[16]United States v. Vela, 927 F.2d 197, 201 (5th Cir. 1991).

[17]United States v. Angulo, 927 F.2d 202, 205 (5th Cir. 1991).

[18]United States v. Peters, 283 F.3d 300, 315 (5th Cir. 2002); United States v. Vaquero, 997 F.2d 78, 84 (5th Cir. 1993).

[19]See United States v. Lghodaro, 967 F.2d 1028, 1030 (5th Cir. 1992).

10

Brook residence along with two letters addressed to Olaya and drug paraphernalia from the garage. In addition, one officer testified that he saw Olaya exiting the Sand Brook residence on the day drugs were recovered from the residence. Together with the PSR, this evidence was sufficient for the district court to find by a preponderance of the evidence that cocaine involved in Olaya's offense was being stored at the Sand Brook residence, that the weapons found in that location were related to the drug offense, and that Olaya had control over the residence.[20] The district court did not err in enhancing Olaya's sentence under § 2D1.1(b)(1).

C.

Olaya next argues that the district court erred by enhancing his offense level pursuant to USSG § 3B1.1(c) based on a finding that he was an organizer or leader of criminal activity.

Where as here, a defendant does not challenge the application of an enhancement in the district court, the decision will be reviewed for plain error only.[21]

Olaya cannot show plain error. At sentencing, the district court found that Olaya had "used [his] brother in law, and [his] dad and a bunch of other people." The district court adopted the

---

[20] See United States v. Juluke, 426 F.3d 323, 328 (5th Cir. 2005) (where loaded weapons were found in the same home as cash and on the same property that court found the defendant had stored heroine, it was not "clearly improbable that the weapon was ocnnected with the offense.").

[21] See United States v. Rodriguez, 15 F.3d 408, 414-415 (5th Cir. 1994).

11

findings of the PSR, which set forth facts showing that Olaya coordinated the drug transactions and gave instructions to his co-defendants. Those statements were corroborated by testimony at trial. Moreover, questions of fact that could have been resolved by the district court at sentencing may never constitute plain error.[22]

D.

Finally, Olaya argues that he was sentenced in violation of his Sixth Amendment rights under the Confrontation Clause, as interpreted by the Supreme Court in Crawford v. Washington[23] because his sentence enhancements under § 2D.1.1(b)(1) and § 3B1.1(c) were based on the post-arrest hearsay statements of his co-defendants. As Olaya did not raise this issue in the district court, it is reviewed for plain error only.[24]

In Crawford, the Supreme Court held that the admission of testimonial statements by a witness who is not present at a defendant's criminal trial violates the Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination.[25] However, Crawford involved a defendant's Confrontation Clause right during his criminal trial.

---

[22]United States v. Lopez, 923 F.2d 47, 50 (5th Cir. 1991).

[23]541 U.S. 36, 52-54 (2004).

[24]See Rodriguez, 15 F.3d at 414-15.

[25]Crawford, 541 U.S. at 68-69.

12

As we have previously noted, there is no <u>Crawford</u> violation when hearsay testimony is used at sentencing.[26]

                              III.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[26]<u>United States v. Beydoun</u>, 469 F.3d 102, 108 (5th Cir. 2006).