**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 2, 2009

Charles R. Fulbruge III
Clerk

No. 08-40305
Summary Calendar

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

HOMERO REY CANTU, JR

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:07-CR-382-1

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Homero Rey Cantu, Jr., appeals his jury trial convictions and sentences imposed for conspiracy to launder money, conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, and providing false information to a federally insured bank. Cantu was sentenced to terms of imprisonment of 240 months on the money laundering count, 325 months on the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

drug distribution count, and 325 months on the false information count, the terms to run concurrently.

Cantu argues that the district court should have dismissed the indictment based on a "speedy trial" violation. The Government argues that Cantu waived any complaint under the Speedy Trial Act because he did not move for a dismissal of the indictment on that basis prior to trial. Cantu did not object to the Speedy Trial Act violation prior to the verdict. Thus, Cantu has waived the right to assert that claim. *See United States v. Hernandez*, 457 F.3d 416, 420 (5th Cir. 2006).

However, Cantu may still assert his claim under the Sixth Amendment, and he argues that he is entitled to a dismissal under the factors set out in *Barker v. Wingo,* 407 U.S. 514, 530 (1970). Cantu was tried within four and one-half months of his indictment. In the absence of "extreme prejudice or a showing of willfulness by the prosecution to delay the trial in order to hamper the defense, . . . a delay of less than one year is not sufficient to trigger an examination of the *Barker* factors." *Cowart v. Hargett*, 16 F.3d 642, 647 (5th Cir. 1994). The record shows that the delay was not sufficient to be presumptively prejudicial, did not result in extreme prejudice, and was not the result of willfulness of the prosecution. Thus, Cantu's Sixth Amendment claim cannot succeed. *Id.*

Cantu argues that his indictment did not set out the elements of the money laundering conspiracy count and was ambiguous. The indictment contained the statutory elements of the offense and provided Cantu with notice that he was being charged with engaging in transactions to conceal his possession of proceeds derived from specified unlawful activity, the distribution of controlled substances. Thus, it was sufficient and not subject to dismissal by the district court. *See United States v. McGilberry*, 480 F.3d 326, 329 (5th Cir, 2007); *United States v. Pennell*, 409 F.3d 240, 243 (5th Cir. 2005).

Cantu also argues that the evidence was insufficient to support his conviction for conspiracy to engage in money laundering. Cantu moved for a judgment of acquittal at the close of the Government's case and renewed his motion at the close of all of the evidence; thus, he has preserved his sufficiency claim for appellate review. *See United States v. Ferguson,* 211 F.3d 878, 882 (5th Cir. 2000). Accordingly, this court reviews to determine whether a rational jury could have found the essential elements of the offense beyond a reasonable doubt. *See United States v. Lopez-Moreno,* 420 F.3d 420, 437-38 (5th Cir. 2005).

The Government provided evidence that Cantu had no reported income between 2001 and 2006, a period during which he made large cash expenditures. "Evidence that a defendant's cash outflow in a financial transaction exceeds his legitimate income is sufficient to show that the transaction 'involves the proceeds of specified unlawful activity,' even if the defendant claims income from other sources." *United States v. Westbrook*, 119 F.3d 1176, 1191 (5th Cir. 1997) (internal citation omitted). Based on this evidence, the jury could determine that Cantu's income was the result of unlawful activity and that he used that income to purchase a house and vehicles and to compensate coconspirators.

Cantu's compensation of coconspirators and his receipt of funds from drug purchasers facilitated the specified unlawful activity of drug trafficking and indicated the coconspirators agreement to join in the money laundering conspiracy. *See United States v. Armstrong*, 550 F.3d 382, 403-04 (5th Cir. 2008). Further, a coconspirator testified that he was provided with cash or money orders to purchase vehicles for Cantu that were used to transport drugs. The jury could have found that these purchases were a means of concealing illegal drug proceeds as well as used to promote the illegal drug activity. Viewing the evidence in the light most favorable to the verdict, the evidence was sufficient to support the verdict that Cantu and others conspired to launder the proceeds of unlawful activity.

Cantu argues that the evidence was insufficient to show that he agreed to the scope of the conspiracy to distribute marijuana as charged in the superseding indictment. He also challenges the amount of marijuana attributed to him in the presentence report (PSR). Insofar as Cantu is challenging the sufficiency of the evidence to support the guilty verdict on count three, the only element that he is challenging is the Government's failure to prove his intent to distribute more that 100 kilograms of marijuana. The Government proved that Cantu conspired to distribute far in excess of 100 kilograms of marijuana by introducing the testimony of coconspirators whose testimony was not incredible and was corroborated by numerous phone records and the ranch gate keys found in Cantu's possession. *See United States v. Valdez,* 453 F.3d 252, 257 (5th Cir. 2006). The evidence of Cantu's participation in the drug trafficking conspiracy that transported massive amount of marijuana was overwhelming. A rational jury could have found the essential elements of the drug conspiracy offense beyond a reasonable doubt. *See Lopez-Moreno*, 420 F.3d at 437-38; *United States v. Infante*, 404 F.3d 376, 385 (5th Cir. 2005).

Insofar as Cantu is complaining about the drug amount attributed to him at sentencing, the PSR contained reliable and detailed evidence of the drug transactions that was not rebutted by Cantu. The evidence presented at trial and the information in the PSR provided sufficient reliable evidence to support the district court's determination of the amount of drugs attributable to Cantu for sentencing purposes. *See United States v. Vital*, 68 F.3d 114, 120 (5th Cir. 1995).

Cantu argues that the district court clearly erred in enhancing his offense level by four levels based on his leadership role in the criminal activity. Both the PSR and the trial testimony showed that Cantu recruited several coconspirators to assist him in the transportation of drugs for distribution in Texas, and Louisiana. Cantu instructed the couriers as to the routes to be taken and provided the vehicles to be used. The evidence showed that Cantu paid the

coconspirators and received the proceeds from the drug sales. Cantu also provided a stash house to store drugs and then paid the owner for the use of the house. The finding that Cantu was a leader or organizer of the criminal activity was plausible in light of the record as a whole. The district court did not clearly err in making the enhancement. *See* U.S.S.G. § 3B1.1, comment. (nn. 2, 4); *United States v. Parker*, 133 F.3d 322, 329-30 (5th Cir. 1998).

Cantu's conviction and sentence are AFFIRMED.